# SMITH KLINE & FRENCH *v.* STATE TAX COMMISSION

534

Marshall C. Cheney, Jr., James C. Dezendorf, Portland, Koerner, Young, McColloch & Dezendorf, Portland, Robert Batt, Philadelphia, Pennyslvania, and Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pennsylvania, submitted briefs for plaintiff.

Theodore W. de Looze, Assistant Attorney General,

Salem, and Robert Y. Thornton, Attorney General, Salem, submitted a brief for defendant.

*Amicus curiae* briefs were submitted by Frank T. Kelly, Attorney General, Lansing, Michigan, Robert A. Derengaski, Solicitor General, Lansing, Michigan, T. Carl Holbrook, Assistant Attorney General, Lansing, Michigan and William D. Dexter, Assistant Attorney General, Lansing, Michigan.

Participating in the *amicus curiae* briefs were Thomas F. Eagleton, Attorney General, Jefferson City, Missouri, M. E. Morris, Director of Revenue, Jefferson City, Missouri, Eugene G. Bushmann, Assistant Attorney General, Jefferson City, Missouri.

Decision for defendant rendered April 24, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside defendant's assessment of corporation income tax against plaintiff for the years 1955, 1956, 1957, and 1958 on the ground that Public Law 86–272 prohibits Oregon from imposing such tax on plaintiff.

## FACTS

The parties stipulated that the material facts of the case are substantially as follows:

Plaintiff, a Pennsylvania corporation, has its principal office in Philadelphia. It manufactures and sells ethical pharmaceutical products in interstate commerce. In Oregon it has no office, no office equipment, no stock of goods, no telephone listing, no telephone answering service, no mailing address, and no automobile. To conduct its only activity in Oregon, plaintiff employs five or six resident professional representatives, so-called "detail men." It reimburses these

representatives for the use of their own cars and other expenses and provides them with samples and sales materials.

Under supervision of its Seattle office, plaintiff's detail men visit hospitals, other institutions, doctors, and retail druggists, as well as wholesalers handling plaintiff's products, for the purpose of explaining the use and usefulness of plaintiff's products and encouraging their use and sale. They do not solicit orders (except upon rare occasions) but rather promote the use of plaintiff's products. The detail men report daily to plaintiff concerning the professional reception of its products. No telephone listing of the representatives identifies them as plaintiff's agents, though their business cards carry their home telephone numbers. At their homes the detail men maintain stocks of samples for use in their promotional work.

Among ultimate users only state institutions deal directly with plaintiff. All other ultimate users purchase from retailers. Retailers, in turn, purchase from wholesalers, whose salesmen solicit orders from druggists, hospitals, and institutions. Oregon wholesalers place orders with plaintiff at its principal office, where they are accepted.

In 1958, defendant requested that plaintiff pay Oregon's corporation net income tax for the years 1955 through 1958, under the Oregon Corporation Income Tax Act of 1955. In May of that year, plaintiff filed its returns and paid tax for those four years. It computed its tax by the three-factor apportionment formula with zero as its Oregon sales and property factors. In August, 1959, defendant issued proposed deficiency assessments in which it recomputed plaintiff's tax, using the three-factor formula with a zero factor for property only. In September, 1959, Congress

passed P.L. 86-272. Defendant made its assessments final in August, 1960. In September, 1960, plaintiff formally appealed to defendant to set aside its assessments and to refund the tax already paid on the ground that P.L. 86-272 exempted plaintiff from Oregon corporate income taxation. After a formal hearing in 1962, defendant, in its Opinion and Order No. I-62-14, affirmed its assessments and denied plaintiff's refund claims because plaintiff's activities in Oregon did not bring plaintiff within the exemption provided by P.L. 86-272.

Plaintiff then filed its complaint in this court to set aside the commission's order and assessment. In its answer, defendant raised for the first time the additional issue that P.L. 86-272 is unconstitutional. After plaintiff replied, defendant requested, under ORS 305.425, that this court remand the case to the tax commission for its formal consideration of the constitutional issue. Plaintiff informally acquiesced in the remand. This court remanded the case to the commission but retained jurisdiction to proceed without the filing of new pleadings. Thereafter, by its Opinion and Order No. I-63-19, the commission held P.L. 86-272 unconstitutional.

The parties then submitted the case upon a detailed stipulation of all material facts. The court allowed the states of Michigan and Missouri to intervene amici curiae, and plaintiff, defendant, and the State of Michigan exhaustively briefed the issues presented.

## ISSUES

This case presents three issues:

(1) Did plaintiff's activities in Oregon bring it within the exemption of P.L. 86-272?

(2) Is P.L. 86-272 constitutional?

(3) If the statute is constitutional, from how much of the tax paid and proposed is plaintiff exempt?

P.L. 86-272 prohibits the states from levying and collecting taxes measured by net income from natural and artificial persons engaged in interstate commerce whose only business activity within the taxing state is the solicitation of orders for the sale of tangible personal property by either the soliciting firm or a customer of the soliciting firm, when any orders thereby obtained are accepted and filled outside the taxing state. This prohibition is applicable after the adoption of the act in September, 1959, and to assessments then pending.

## BACKGROUND OF LEGISLATION

■ This federal act culminates a lengthy and often heated controversy between the states and multi-state business concerns, most of which are corporations. In Oregon and many other states, state corporate taxation measured by net income began with an excise tax upon the right to engage in business within the state. As commerce became more national in character, many companies engaged in commerce through various states but not within those various states on an intrastate basis. In 1951, the United States Supreme Court struck down, as unconstitutional, a corporate excise tax upon wholly interstate commerce beginning in, passing through, or ending in the taxing state. *Spector Motor Service, Inc. v. O'Connor,* 340 US 602, 71 S Ct 508, 95 L ed 573 (1951). That case held a corporate excise tax unconstitutional as an undue burden upon interstate commerce, because it was imposed on the right to do business in interstate commerce.

After that decision, many states enacted corporation income tax acts which imposed a tax upon the realization of net income by a corporate taxpayer engaged in interstate commerce and not upon a taxpayer's right or privilege to conduct its interstate business. In order to avoid any question under the equal protection clause of the Federal Constitution, these states made the rates and incidents of their corporation net income taxes identical with those of their corporation excise taxes, which were still applicable to corporations authorized to do business within their boundaries.

■ In February, 1959, the United States Supreme Court held the corporate net income tax to be constitutional under both the commerce clause and the due process clause of the Federal Constitution. *Northwestern States Portland Cement Co. v. Minnesota* and *Williams v. Stockham Valves & Fittings, Inc.*, 358 US 450, 79 S Ct 357, 3 L ed2d 421, 67 ALR2d 1292 (1959). Immediately, corporations engaged in interstate commerce sought Congressional action to defeat the application of the Supreme Court decision. In September, 1959; after hurried consideration of this complex problem, Congress enacted P.L. 86-272.

FIRST ISSUE: CONSTRUCTION OF P.L. 86-272

In making its assessments, defendant strictly construed the exemption granted by P.L. 86-272 and found that plaintiff's Oregon activities are not that solicitation of orders which the statute exempts. Defendant contends that P.L. 86-272 creates an "island of immunity" around the solicitation activities expressly described in the statute; that solicitation of orders requires that an actual order be sought by an individual calling upon a potential customer; and that the

activities of plaintiff's employees, which merely encouraged the placing of orders with the wholesale drug firms selling plaintiff's products, did not qualify plaintiff for exemption.

On the other hand, plaintiff contends that the act is properly construed as a "minimum activity" statute —that it exempts all corporations the activities of which do not exceed solicitation of orders. Furthermore, plaintiff contends that its Oregon employees do solicit orders for plaintiff's customers within the meaning of P.L. 86-272 and that the statute does not require the receipt of an order by plaintiff's employees so long as they are soliciting and encouraging the purchase of plaintiff's products.

■ In this court's opinion, plaintiff's activities in Oregon meet the statutory requirements for exemption. Congressional committee reports support this conclusion. Conference Report No. 1103, 86th Cong., 1st Sess. (1959); Select Committee on Small Business, *The Problems Faced by Small Business in Complying With Multi-State Taxation of Income Derived From Interstate Commerce,* S. Rep. No. 453, 86th Cong., 1st Sess. (1959) p 13; Comm. on Finance, *State Taxation of Income Derived From Interstate Commerce,* S. Rep. No. 658, 86th Cong., 1st Sess. (1959). These reports show that Congress intended to exempt not only the specifically described phase of interstate sales efforts but also all lesser, included phases.

■ Furthermore, the nature of plaintiff's business makes its activities in Oregon the equivalent of solicitation of orders in other, less technical businesses. Ethical drugs, are generally purchased by the public from retail druggists. But the drug to be purchased is selected, not by the purchaser, but by his physician. An ethical drug sales effort comparable to direct

solicitation of orders for shoes, valves, or cement requires "selling" the physician on the wisdom of prescribing the particular product for his patient. By soliciting the stocking of plaintiff's products by druggists and the prescription of those drugs by physicians, plaintiff's detail men perform the same sales function in plaintiff's field that salesmen soliciting actual orders from the ultimate user perform in other businesses. A realistic legal and factual interpretation of P.L. 86-272 requires exemption of plaintiff from Oregon corporation income tax.

## SECOND ISSUE: DUE PROCESS

■ Based upon its second Opinion and Order, defendant's answer presents the basic, constitutional issues under the commerce and due process clauses of the Federal Constitution. P.L. 86-272 prohibits state income taxation of certain businesses in interstate commerce categorized by the extent of their activity within the taxing state. The same extent of activity also establishes the requisite connection, or "nexus," between the taxpayer and the taxing state to support such taxation under the federal due process clause. Since P.L. 86-272 prohibits taxation where this nexus alone exists, defendant contends that P.L. 86-272 is an attempt by Congress to regulate due process, not interstate commerce.

■■ Due process is a judicial concept. Ultimate determination of due process is a judicial, not a legislative, task. *State Board of Insurance v. Todd Shipyards Corp.,* 370 US 451, 457, 82 S Ct 1380, 8 L ed2d 620, 625 (1962). See also concurring opinion of Mr. Justice Douglas in *Braniff Airways v. Nebraska State Board of Equalization and Assessment,* 347 US 590,

603, 74 S Ct 757, 98 L ed 967, 979 (1954). Legislatures frequently violate due process. Were the courts not vested with ultimate determination of due process, "legislative judgments, decrees, and forfeitures in all possible forms, would be the law of the land." Daniel Webster's analysis adopted in *Dartmouth College v. Woodward,* 65 NH 473, 614 (1817), case also reported at 1 NH 111. The Supreme Court has already held that solicitation of orders within a state establishes sufficient nexus to support the due process of that state's net income taxation. *Northwestern States— Stockham, supra; Brown-Forman Distillers Corp. v. Collector of Revenue,* 234 La. 651, 101 S2d 70 (1958), cert. den., 359 US 28, 79 S Ct 602, 3 L ed2d 625 (1959) ; *International Shoe Co. v. Fontenot,* 236 La. 279, 107 S2d 640 (1958), cert. den., 359 US 984, 79 S Ct 943, 3 L ed2d 933 (1959). Congress cannot legislatively overrule the Supreme Court's determination of due process.

■ However, in P.L. 86-272 Congress does not attempt to alter any due process concept or to determine what is sufficient nexus to support Oregon's income tax. Instead it uses what is basically a due process concept as a standard in attempting to regulate interstate commerce. It defines the corporations which it seeks to protect in terms usually employed in due process determinations. Then, it uses this due process concept, not to determine due process, but to limit its regulation of interstate commerce. Such use of the due process concept as a definition in P.L. 86-272 is not an unconstitutional attempt by Congress to regulate due process.

This court's determination that plaintiff is entitled to the exemption of P.L. 86-272 and that the statute does not attempt to regulate due process squarely

presents the issue of whether P.L. 86-272 is a constitutional exercise of Congressional power to regulate interstate commerce.

## SECOND ISSUE: INTERSTATE COMMERCE

Plaintiff contends that the statute is constitutional. It relies on the decision of Judge Fred A. Blanche, of the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana, who held P.L. 86-272 constitutional on July 12, 1963, in *International Shoe Co. v. Collector of Revenue,* (1 CCH Louisiana Tax Cases, ¶ 200-227). A fortnight ago, on April 1, 1964, the Louisiana Supreme Court affirmed this decision in an opinion by Mr. Justice McCaleb. *International Shoe Company v. Cocreham,* 246 La 244, 164 S2d 314 (1964). Plaintiff also cites such eminent authorities as Professor Jerome R. Hellerstein, whose position the Louisiana Supreme Court substantially adopted. See Hellerstein, "The Power of Congress to Restrict State Taxation of Interstate Commerce," 12 J. Taxation 302 (1960); Hellerstein, "An Academician's View of State Taxation of Interstate Commerce," 16 Tax L. Rev. 159 (1961). Plaintiff's rationale is (1) that Congress has unlimited power to regulate interstate commerce under the commerce clause and to decree what burden states may place on this commerce; (2) that an income tax levied on corporations in interstate commerce is a burden on interstate commerce; (3) that the Supreme Court's determination in *Northwestern States—Stockham* that a state income tax was not an undue burden on interstate commerce applies only in the absence of Congressional action; and therefore, (4) that Congress has the power to prohibit state taxation of this commerce, whether or not the taxation which it prohibits is valid in the absence of Congressional action.

Defendant finds P.L. 86-272 unconstitutional. It contends that net income taxation is not a burden on interstate commerce because, by the time that the income tax is imposed on the net profits, these profits are no longer within interstate commerce. It also contends that the exemption from state taxation at the net income level provided in P.L. 86-272 violates the due process clause of the Fifth Amendment of the Federal Constitution.

These positions have been ably and exhaustively briefed in this court. In these briefs, the articles of Professor Hellerstein, Mr. Cox, and others, and the decisions of Judge Blanche and Mr. Justice McCaleb in Louisiana, as well as in prior United States Supreme Court decisions themselves, this court finds ample quotations from Supreme Court decisions to support both positions. Referring to this plethora of quotations, Mr. Justice Frankfurter said: "To attempt to harmonize all that has been said in the past would neither clarify what has gone before nor guide the future." *Freeman v. Hewitt,* 329 US 249, 252, 67 S Ct 274, 91 L ed 265, 271 (1946). Therefore, this court must reach the jugular of this case by reasoning from cases rather than quotations, by finding substantial, rather than formal, distinctions, and by seeking to understand and weigh the basic policies underlying conflicting constitutional concepts.

■ Article I, Section 8, of the United States Constitution grants Congress the power "To regulate Commerce * * * among the several states * * *." The first question, then, is whether the subject matter of P.L. 86-272 is interstate commerce and, therefore, subject to Congressional regulation. The Louisiana Supreme Court and other supporters of plaintiff's position find or assume that it is. Proper determina-

tion of this issue rests squarely on interpretation of *Northwestern States—Stockham.*

In that decision the Court held that a fairly apportioned state net income tax was not an undue burden on interstate commerce. Earlier, in *Spector,* the Court had held that a corporation excise tax measured by net income was such undue burden on interstate commerce. These two beacon cases determine the course of interpretation. A proper resolution of the issues raised in the instant case requires determination of why the corporation excise tax in *Spector* was an undue burden on that commerce, while the corporation income tax in *Northwestern—Stockham* was not.

■ A tax is a burden *per se.* Any taxpayer knows this and of it this court takes judicial notice. The excise tax in *Spector* and the income tax in *Northwestern States—Stockham* both were burdens imposed on corporations engaged solely in interstate commerce within the taxing state.

In each of those cases the actual burden on commerce was substantially the same, a tax determined by net income. For instance, Oregon has both a corporation excise tax and the subject corporation net income tax. The rates and incidents of the two taxes are identical. A corporation qualified to do business in Oregon pays a certain amount of excise tax. The same corporation, if it were engaged solely in interstate commerce but not qualified to do business in Oregon, would pay the same amount of tax as corporation income tax. Yet if the corporation excise tax were applied to the corporation in the second situation, it would be an undue burden on interstate commerce under *Spector,* even though the same tax burden applied as a corporation net income tax in the same

situation would not be an undue burden on interstate commerce under *Northwestern States—Stockham.*

Because a tax is a burden and the burden of the same amount of tax was not undue in *Northwestern States—Stockham,* the undueness of the burden in *Spector* cannot arise from the extent of the burden, the weight of the tax. The logical and practical distinction between *Spector* and *Northwestern States—Stockham,* then, is that in the former the burden was imposed on interstate commerce, while in the latter it was not. Furthermore, the logical and practical conclusion is that, by its nature, a net income tax is not imposed on interstate commerce but upon the profits of a business after the proceeds of its commerce have left interstate commerce.

*Northwestern States—Stockham* supports this conclusion. In that case and *Spector,* the Court distinguished between a tax on interstate commerce itself and a tax on income derived from an interstate business (358 US at 464). This distinction is logical and realistic. It coincides conceptually with other distinctions which mark the boundaries between the fiscal sovereignty of the states and Congressional regulation of interstate commerce. The Supreme Court has long recognized that, at some point in the entire framework of our national business intercourse, interstate commerce must cease. For example, states can levy ad valorem taxes on goods flowing in interstate commerce after they have left the stream of interstate commerce. *Minnesota v. Blasius,* 290 US 1, 54 S Ct 34, 78 L ed 131 (1933); *Independent Warehouses, Inc. v. Scheele,* 331 US 70, 67 S Ct 1062, 91 L ed 1346 (1947).

The same theory must hold true as to the taxation of the moneys derived from the manufacture,

transportation, and sale of those goods. Once moneys are anointed as interstate commerce, Congress cannot forever sequester them as immune from local fiscal burdens. *Northwestern States—Stockham, supra.* At some point the proceeds of interstate commerce must be deemed to have left interstate commerce and returned to the less exalted position from which they have come. By distinguishing an excise tax from an income tax of the same fiscal burden, by distinguishing between interstate commerce and net income derived from interstate commerce, and by recognizing interstate commerce as a temporary condition and not an inherent, indissoluble state, *Northwestern States—Stockham* established the limit of interstate commerce. The Court recognized that, by the time proceeds derived from interstate commerce filter through the vicissitudes of expenses, depreciation, and the other proper accounting charges to become net profit, they cease to be within interstate commerce. Therefore, a state tax imposed upon the realization of that net income, not merely measured by that net income, is not a tax on interstate commerce and Congress cannot prohibit its taxation under the commerce clause.

Plaintiff and those in its support do not so interpret *Northwestern States—Stockham.* They say it holds that the net income tax is a burden on interstate commerce but not an undue burden. They claim to have interpreted the majority opinion as Mr. Justice Frankfurter did in his dissent. This is not accurate. Certainly, Mr. Justice Frankfurter thought the income tax an undue burden on interstate commerce; but he so held because he found the tax to be imposed directly on interstate commerce. Mr. Justice Whittaker, in his dissent in which Mr. Justice Frankfurter joined,

acknowledged that the majority of the court did not so find, when he said (358 US at 483):

"* * * There is no room to dispute these admitted facts. Yet, I believe, the Court does not squarely face them but veiledly treats the cases as though intrastate commerce were to some extent involved. * * *"

The transactions which earned the gross income admittedly were wholly interstate commerce. The majority opinion focused its attention, not on the nature of the commercial transactions creating the gross income, but on the nature of the tax on the net income. The tax and the realization of net income on which it was imposed, not the transactions, were of intrastate nature. A careful reading of the dissents shows that the dissenters disagreed with the majority concerning the continuance of interstate commerce through the application of expenses to gross income to arrive at net profit. If, as Mr. Justice Whittaker reasoned, the income received from transactions in interstate commerce does not lose its character as interstate commerce by the time that it becomes net profit or loss, only the determination of *Northwestern States—Stockham* which he and Justices Frankfurter and Stewart espoused was logically possible. A tax on such net income would have been a direct burden on interstate commerce and as fatally unconstitutional as was the identical burden in *Spector*. But this is not what the majority of the Court found and is not the result of that case.

This court's interpretation recognizes the distinction between state regulation prohibited as an undue burden on interstate commerce and state regulation permissible as a burden, but not an undue bur-

den, on interstate commerce until Congress pre-empts the subject of regulation. See Hellerstein, "The Power of Congress to Restrict State Taxation of Interstate Commerce," 12 J. Taxation 302 (1960); and Hellerstein, "An Academician's View of State Taxation of Interstate Commerce," 16 Tax L. Rev. 159 (1961). But Congress cannot pre-empt state taxation, because Congress does not lay taxes for the states. This situation is not analogous to establishing utility rates or licensing engineers, when Congress acts under the commerce power after the state has taken similar action under the police power. *The Shreveport Rate Case*, (Houston, E. & W. T. R. Co. v. United States), 234 US 342, 34 S Ct 833, 58 L ed 1341 (1914); *Smith v. Alabama*, 124 US 465, 8 S Ct 564, 31 L ed 508 (1888). In the case of rates or licensing for safety, Congress acts to supersede and replace state regulation with federal regulation. Both regulations burden interstate commerce. In the areas where state regulation is *ejusdem generis* with potential federal regulation, burdens on interstate commerce are permitted until Congress acts. A state tax is not *ejusdem generis* with potential Congressional regulation under the commerce clause. It is not a burden which Congress might impose in the appropriate regulation of interstate commerce to promote public safety and welfare or to preserve the free flow of interstate commerce. It is not a burden permitted to the states until Congress acts, but rather, it is an undue burden on interstate commerce, if it is imposed on interstate commerce at all.

▇▇▇ Furthermore, not only may Congress not pre-empt state taxation but, as pointed out above, the logical interpretation of *Northwestern States—Stockham* is that a state net income tax is not laid "on inter-

state commerce." Because the burden of a net income tax is not on that commerce which Congress may pre-empt or otherwise regulate, the distinction between prohibited undue burdens and due burdens permitted until Congress acts is inapplicable. Congress' power to prohibit state taxation terminates when the limits of interstate commerce are reached. The subject corporation income tax is imposed beyond that point.

■ This court has also considered the possible argument that P.L. 86-272 is a valid regulation of intrastate commerce affecting interstate commerce under an extension of *Wickard v. Filburn*, 317 US 111, 63 S Ct 82, 87 L ed 122 (1942) and *The Shreveport Rate Case, supra.* The acquisition of net profit is not commerce *per se.* Despite the breadth of its application of the commerce clause, *Wickard v. Filburn, supra,* recognizes that every incident of business does not fall victim of commerce regulation (317 US at 120). Both *Wickard v. Filburn* and *The Shreveport Rate Case* allowed Congressional regulation to extend to intrastate commerce affecting interstate commerce in areas in which Congress had already affirmatively regulated interstate commerce, i.e. farm marketing and railroad rates. In the instant case, Congress seeks to prohibit a state tax, when it has no competence to impose state taxes or to pre-empt state taxation. Furthermore, it seeks to prohibit a state act, rather than extend to intrastate commerce its own affirmative regulation already in effect in interstate commerce. These are substantial distinctions. A failure to recognize them is fraught with dangerous consequences. To date, the defects of state taxes which burden the free flow of interstate commerce have caused their judicial prohibition. An attempt to justify, under *Wickard v. Filburn* and similar cases, Congressional prohibition

of state taxes which do not burden interstate commerce is a substantial departure from the original scope of those decisions. This court believes such broadening of the doctrine of those cases is both unsupported by prior decisions and unwarranted by reason and logic.

## SECOND ISSUE:
## CONFLICTING FUNDAMENTALS

■ The basic problem presented by the instant case, and foreseen in *Northwestern States—Stockham,* arises from the collision of two fundamental constitutional concepts. On the one hand, Congress has paramount, almost unlimited, authority to regulate interstate commerce. It can regulate not only interstate commerce but also any aspect of intrastate commerce affecting interstate commerce. Congress has validly regulated the grain grown by an Ohio farmer as feed for his livestock and poultry because he sold that livestock and poultry in intrastate commerce in competition with interstate commerce and their sale affected the price of interstate products sold in the same market. *Wickard v. Filburn, supra.* It has validly regulated intrastate utility rates because those rates affected the rates charged in interstate commerce by the same or competing utilities. *The Shreveport Rate Case, supra.* As our economy becomes more and more closely integrated nationally, this Congressional power reaches into virtually every level of our economic life. Today, national concerns engaged in interstate commerce compete in the market place of every village and hamlet across the land. Almost every commercial transaction affects interstate commerce.

■ On the other hand, the Constitution is the compact of the several sovereign states. *New York v.*

*United States,* 326 US 572, 595, 66 S Ct 310, 90 L ed 326 (1945). State sovereignty is limited only by the Federal Constitution as it is interpreted by the courts. The power to impose taxes unrestricted except by the consent of the governed is the essence of democratic sovereignty. "As it is not a kingdom without subjects, so he is not a King without revenues." *An Information Against Bates,* Lane's Reports 23, 145 English Reports (Exchequer) 267 (1606).

■ With the clash of these two concepts in the instant case, the victorious commerce clause reaches its Rubicon. Congressional regulation of interstate commerce will engulf state sovereignty, if Congress is able to prohibit an otherwise valid state net income tax either under the doctrine of *Wickard v. Filburn* and *The Shreveport Rate Case, supra,* or because it is imposed on interstate commerce. If, as interstate commerce Congress can prohibit a state tax on net income derived from interstate commerce, then, Congress can prohibit all state taxation under its broad power to regulate intrastate affairs affecting interstate commerce. It can prohibit state taxes imposed on domestic corporations engaged in interstate commerce in competition with purely interstate corporations. It can prohibit state taxation of wholly intrastate businesses which compete with plaintiff and other interstate concerns. In fact, in our closely integrated, national business life, Congress can prohibit or render equitably impossible virtually all state taxation as regulation of either interstate commerce or commerce affecting interstate commerce, if it can prohibit net income taxes as a regulation of interstate commerce. The same result obtains if Congressional prohibition of state net income taxation is permitted under an extension of *Wickard v. Filburn, supra.* Stripped of the

power to tax, the sovereignty of states is a hollow shell. An interpretation of the Federal Constitution which makes the imposition of otherwise constitutional state taxes subject to the by-your-leave of Congress does not merely weaken—it destroys—the entire federal concept of government. It reduces the states to the status of counties. This court is fully aware that our Federal Constitution is viable, variable, and adaptable to the changing times. Cardozo, *The Nature of the Judicial Process*, 17 (1921); Douglas, *We the Judges*, 433 (1956); Jackson, *The Struggle for Judicial Supremacy*, 174 (1941). But this court does not believe that its flexibility extends to the point of destroying the very essence of that compact.

■ The substantial defects of P.L. 86-272 lie in its prohibitory nature. Its prohibitory character distinguishes the point at which Congressional action is directed in P.L. 86-272 from the impact point of valid regulation of interstate commerce. The primary impact and effect of P.L. 86-272 are the prohibition of the exercise of sovereignty rather than a regulation of its exercise over commerce under Congress' jurisdiction. Furthermore, by prohibiting certain state taxation Congress creates an exemption or immunity, not merely a regulation. Exemptions and immunities from tax are not favored in the law because they shrink the base over which the tax burden is spread. *Oklahoma Tax Commission v. United States*, 319 US 598, 612, 63 S Ct 1284, 87 L ed 1612 (1942); *Staiger v. Holman*, 144 Or 67, 77, 23 P2d 917 (1933).

In *Freeman v. Hewit, supra* (329 US at 252), Mr. Justice Frankfurter pointed out that Congress has the commerce power in order that free trade may be maintained among the states. But to preserve the free flow of that commerce, Congress neither needs to, nor can

it, destroy the sovereignty of states. To protect interstate commerce, Congress has many arrows in its quiver. When the one marked "prohibition of state taxation" is shattered on the rock of the Constitution, all its unused arrows are not thereby broken. That one arrow has merely missed the quarry Congress is hunting.

Congress may implement judicial decisions holding state taxation unconstitutional under the commerce clause. The Supreme Court has held that the states cannot discriminate against foreign corporations by imposing unequal taxation. *Welton v. Missouri,* 91 US 275, 23 L ed 347, (1876); *Best & Co. v. Maxwell,* 311 US 454, 61 S Ct 334, 85 L ed 275 (1940). In aid of the free flow of commerce, Congress may prohibit any unequal discriminatory taxation of interstate commerce. Congress may prohibit states collectively or severally from so taxing interstate commerce that more than one hundred per cent of the net income of a business engaged in interstate commerce is subjected to tax. Such taxes in the aggregate are patently discriminatory and confiscatory. See *Gwin, White & Prince, Inc. v. Henneford,* 305 US 434, 59 S Ct 325, 83 L ed 272 (1939). Because some interstate allocation formulae are inherently valid but cause discrimination when used in conjunction with other valid formulae, Congress may adopt a uniform allocation formula and place the burden on any state departing from it to prove that the interaction of its formula with other formulae does not result in discriminatory or confiscatory taxation in the aggregate on more than one hundred per cent of the taxpayer's income. Congress may also regulate the forms and reports required of interstate commerce to the extent that such forms and reports increase the cost of interstate commerce,

because an increase of the cost of doing business is a direct charge against gross income and clearly differs from a tax imposed after net income has been determined. *Northwestern States—Stockham, supra.* Such Congressional regulation, as distinguished from outright prohibition of a valid state tax, appear proper under the due process, equal protection, and commerce clauses.

This legislation would protect interstate commerce, from what Mr. Justice Frankfurter in his *Northwestern States—Stockham* dissent (358 US 474-7) found to be impediments of state taxation to the free flow of interstate commerce, without attacking the state's sovereign power to levy a valid tax at all. Congress would not be venturing beyond the protection of interstate commerce to directly attack state sovereignty. It would not be flatly prohibiting a state from imposing and collecting a tax upon net income from a taxpayer over whom the state has tax jurisdiction under the due process clause. It would not be attempting to extend interstate commerce regulation to prohibit a tax on a subject of tax, net profit, which lies beyond the purview of interstate commerce and results from the interaction of economic factors so remotely related to interstate commerce that it is no longer a part of that commerce.

## SECOND ISSUE: FIFTH AMENDMENT

Defendant also contends that, even if Congress can prohibit state net income taxation under the commerce clause, P.L. 86-272 violates the due process requirements of the Fifth Amendment of the Federal Constitution. P.L. 86-272 does not exempt all corporations engaged in interstate commerce which have a minimum nexus with a taxing state. Similarly, it discriminates

against domestic corporations and qualified foreign corporations because of a purely formal distinction. Its effect and limitation are not fairly related to the objects which Congress seeks to serve. While there may be validity to this argument, this court has concluded that P.L. 86-272 is unconstitutional and, therefore, the due process question is moot.

## SUMMARY

■ In summation, this court finds: That plaintiff is immune from Oregon's Corporation Income Tax Act of 1955 under the terms of P.L. 86-272, if that statute is constitutional; but that P.L. 86-272 is unconstitutional. The net income tax which it prohibits is not a burden on interstate commerce because plaintiff's realization of net income properly apportionable to Oregon and the Oregon tax imposed thereon are not part of interstate commerce, but rather are beyond Congress' power to regulate that commerce.

Defendant shall prepare and present a decree affirming its assessment of Oregon corporation income tax against plaintiff for the calendar years 1955 through 1958 and denying plaintiff's claims for refund of tax paid on account of those years.*

---

*Foregoing case appealed. Oregon Supreme Court opinion found in 80 Or Adv Sh 785.