Submitted on briefs May 12, reversed July 12, 1927.

# RALPH KITTERMAN ET AL. *v.* EAGLE PINE COMPANY.

(257 Pac. 815.)

**Sales—Contract to Sell Specifically Described Lumber at Minimum Prices "on Bright Lumber Only" Warranted Compliance With Description and Merchantable Quality (Or. L., § 8178).**

1. Contract for sale of specifically described lumber at stated minimum prices "on bright lumber only" *held* to warrant that lumber shipped would comply with description and specifications and be of merchantable quality, within Section 8178, Or. L.

**Sales—Place and Time of Inspection Depends on Nature of Contract and Goods, Manner of Packing and Shipping, and Other Facts Showing Parties' Intent, as Expressed in Contract or Conduct.**

2. Where and when right of inspection is to be exercised by buyer depends on nature of contract, character of goods, as whether they are perishable or not, manner of packing and shipping, and other facts or circumstances tending to show what parties contemplated, as expressed in contract, or their conduct in reference thereto.

**Sales—Buyer is Entitled to Reasonable Opportunity to Examine Goods Before Completing Sale.**

3. Buyer is entitled to reasonable opportunity to examine goods delivered, in order to ascertain whether they conform to contract, before sale is completed.

**Sales—Buyer Held not Bound to Inspect Lumber Before Shipment from Sellers' Mill to Buyer's Customers.**

4. Under contract for sale of lumber, shipped from sellers' mill to defendant's customers by way of buyer's place of business, on delivery at which initial payment was due, it was not buyer's duty to inspect lumber before shipment.

---

3.  See 23 R. C. L. 1432.

Sales—Buyer Held not Bound to Inspect Lumber at Its Place of Business in Transit to Its Customers.

5. Buyer of lumber under contract reserving 10 per cent of purchase price, to be paid on receipt and acceptance of lumber by buyer's customers, to whom sellers agreed to deliver on buyer's order, *held* not bound to inspect lumber at buyer's place of business while in transit to final destination.

Sales—Buyer, Ordering Goods of Specific Quality, to be Shipped to It at Distant Place, may Inspect Them Until Received and Accepted at Ultimate Destination.

6. Generally, where goods of specific quality, which seller undertakes to deliver to carrier, to be forwarded to buyer at distant place, are ordered, right of inspection, in absence of specific provision in contract, continues until goods are received and accepted at ultimate destination.

Sales—Buyer may Inspect, and Rely on Warranty of Quality, After Accepting Lumber, if Seller was Notified Within Reasonable Time After Buyer Knew, or Should have Known, of Breach (Or. L., § 8212).

7. Under Uniform Sales Act (Or. L., § 8212), buyer may inspect lumber purchased and rely on warranty of quality after accepting it, if notice was given seller within reasonable time after buyer knew, or should have known, of breach of warranty.

Sales—Contract Provision Relieving Sellers from Responsibility for Resale Losses Did not Relieve Them from Liability for Breach of Warranty of Quality.

8. Provision of contract for sale of lumber that seller shall not be responsible for losses suffered by buyer on resales *held* not to relieve seller from liability for breach of warranty of quality; purpose being to provide against losses due to declining market.

Stipulations—Finding of No Breach of Warranty Held Irrelevant Under Stipulation Submitting Issues as to Place of Inspection and Sellers' Responsibility for Resale Losses.

9. Trial court's finding that there was no breach of warranty of lumber sold *held* irrelevant under issues, submitted by stipulation, as to whether it was buyer's duty to make inspection and whether sellers were responsible for losses on resales.

Stipulations—Courts cannot Go Beyond Parties' Stipulation of Issues.

10. Courts cannot go beyond stipulation of parties as to issues submitted.

---

Sales, 35 Cyc., p. 225, n. 29, p. 226, n. 41, p. 227, n. 47, p. 305, n. 50, p. 307, n. 59, p. 425, n. 91, p. 431, n. 36.

6. See 23 R. C. L. 1433.
10. See 25 R. C. L. 1105.

From Josephine: C. M. THOMAS, Judge.

In Banc.

For appellant there was a brief over the names of *Messrs. Dey, Hampson & Nelson, Mr. Herbert L. Swett, Mr. George L. Buland* and *Messrs. Norton & Allen.*

For respondents there was a brief over the name of *Mr. O. S. Blanchard.*

BELT, J.—This is an action to recover balance alleged to be due on the purchase price of twenty carloads of lumber sold to defendant. In defense thereto an answer was filed alleging, by way of recoupment and counterclaim, damages sustained on account of breach of warranty as to quality. There is no dispute between the parties with reference to the amount of lumber delivered nor the agreed price therefor, but defendant asserts that it did not conform to the contract of sale in respect to quality. The case was submitted to the court, without a jury upon a stipulation of facts, and judgment was rendered for plaintiffs. Defendant appeals.

Plaintiffs, who are manufacturers of lumber at Waters Creek, Josephine County, Oregon, entered into a written contract June 30, 1923, with defendant, a wholesale dealer in lumber, whereby plaintiffs agreed to deliver to defendant f. o. b. Grants Pass, Oregon, all of the lumber manufactured by them at their mill, for a stipulated minimum price. The contract provided that upon delivery 90 per

cent of the agreed minimum price was to be paid by the defendant and the balance upon the arrival and acceptance of the lumber by defendant's customers. It was also agreed that the defendant, on resale of the lumber, should endeavor to obtain the best prices therefor and, upon a sale in excess of the minimum price, the plaintiffs were to receive 93 per cent of the net sales price and defendant 7 per cent thereof. Plaintiffs were to ship the lumber upon order of defendant, but, in the event that no directions were given in that respect, the seller had the right to make delivery, notwithstanding. The ninth paragraph of the agreement provides:

"The deliveries to the second party shall be deemed a sale and the first parties shall in no manner be responsible for losses suffered by the second party by virtue of resales."

Upon defendant's order, plaintiffs, between July and November, 1923, loaded a total of twenty cars of dry pine lumber to be shipped to the various customers of the defendant at Council Bluffs, Iowa, and other designated points in the Middle West. The lumber was hauled by the Oregon Coast Railway Company over its line from plaintiffs' mill to Grants Pass and from there it was transported on the Southern Pacific lines to ultimate destination. Defendant's office and principal place of business was at Grants Pass or the junction of the two railway lines above mentioned.

It is conceded by counsel that the decision of the case hinges upon the construction of the contract relative to the matter of inspection. No question of fact is involved. It was not seen fit to submit the cause upon its merits and permit the court to determine whether there had been a failure of the

plaintiffs to comply with their contract, but the question was thus stipulated:

" * * It is agreed that the Court shall determine where it was the duty of the defendant to make inspection. If the Court shall find that the defendant should have inspected the lumber at Waters Creek, Oregon, or Grants Pass, Oregon, the Court shall enter judgment against the defendant for the invoice price of all cars in the sum of $13,593.76, and less the deductions for cash advanced, freight advanced to Grants Pass, discount, overpayment, aggregating the sum of $10,527.24, and less the net sum of overweights, over and above the underweights in the sum of $268.56; and that in arriving at said judgment that Court shall include interest at six per cent as prayed for in the complaint.

"It is further stipulated and agreed that should the Court find that the plaintiffs were responsible for resales by the defendant, or that the defendant was not required to make inspection of said carloads at Grants Pass, Oregon, or Waters Creek, Oregon, but had the right to make inspection upon the unloading of the car at final destination outside of Oregon, that then, in that event the defendant shall be entitled to recover from the plaintiffs the following items: * * and that the defendant shall have judgment against the plaintiffs for the total of said items ($14,226.49) less the invoice price of the lumber, or the sum of $632.73."

Was it the duty of defendant to inspect the lumber at Waters Creek, the point of shipment, or Grants Pass, Oregon, designated as the place of f. o. b. delivery, or at the point of final destination?

The contract makes no express provision relative to inspection. We are to determine what was within the contemplation of the parties concerning the place of inspection by the nature and character of the contract and by the conduct of the parties in reference thereto. Although the agreement in many

ways indicates agency, the parties have specifically
designated it as one of sale and it is so treated. If
there is anything definite and certain in this con-
tract it is that plaintiffs should be guaranteed the
minimum price for the lumber delivered. They are,
however, vitally interested in the resale of the lum-
ber to the extent that they were to receive 93 per
cent of the net sales price. Unquestionably the
seller knew that the defendant, as a wholesale
dealer, contemplated shipping the lumber to points
in the Middle West, as evidenced by the bills of
lading issued wherein the consignees were desig-
nated.

1. The lumber mentioned in the contract of sale
was specifically described and the minimum prices
therein quoted were "on bright lumber only." It
is clear that a warranty existed that the lumber
shipped would comply with the description and
specifications of the contract of sale, and was of a
merchantable quality: Section 8178, Or. L.

2, 3. The right of inspection is to enable the buyer
to ascertain whether the goods delivered conform
to the contract of sale. Where and when this right
is to be exercised depends on the nature of the con-
tract, the character of the goods, the manner in
which they are shipped and any other fact or cir-
cumstance tending to show what was within the con-
templation of the parties, as expressed in their con-
tract or by their conduct in reference thereto. The
law applicable to such right is in keeping with rea-
son and common sense. It is apparent that a higher
degree of diligence should be exercised in reference
to the inspection of perishable goods than of those
which are not of such character. Furthermore,
in determining the time of inspection, it is important
to take into consideration the manner in which the

goods were packed or shipped. It is the purpose of the law to give the buyer a reasonable opportunity to examine the goods delivered before there is a completed sale.

4. In the instant case it is well to bear in mind that the lumber was placed on board the cars by the plaintiff and did not come into actual possession of the defendant until it was finally delivered upon order to its customers. When and at what place, therefore, did the defendant have a reasonable opportunity to examine this lumber? Certainly it was not its duty to inspect the lumber before it was shipped, as no part of the payment of the purchase price was due until it had been delivered at Grants Pass. We may well eliminate, under the authority of *Eaton* v. *Blackburn,* 52 Or. 300 (96 Pac. 870, 97 Pac. 539, 132 Am. St. Rep. 705, 16 Ann. Cas. 1198, 20 L. R. A. (N. S.) 53), Waters Creek as a place of inspection.

5. Was it the duty of defendant to inspect the lumber at Grants Pass while in transit to its final destination? We answer, No. The parties to the contract did not so contemplate. Ten per cent of the purchase price was reserved to be paid "upon the receipt of arrival (of lumber) and acceptance by their (defendant's) customers." Plaintiffs specifically agreed to deliver this lumber upon order of defendant. It would be unreasonable to unload the cars at Grants Pass for the purpose of inspection and reload them in order to make final delivery. The delay and expense thereby incurred would tend to defeat the very object of their common enterprise; viz., the securing of a profit upon resale.

6. The rule is well stated in 23 R. C. L. 1433:

"It is the general rule that where goods are ordered of a specific quality, which the seller under-

takes to deliver to a carrier to be forwarded to the buyer at a distant place, the right of inspection, in the absence of any specific provision in the contract, continues until the goods are received and accepted at their ultimate destination; in such a case the carrier is not the agent of the buyer to accept the goods as corresponding with the contract, although he may be his agent to receive and transport them." Citing numerous cases, among which are *Eaton* v. *Blackburn, supra,* and *Pope* v. *Allis,* 115 U. S. 363 (29 L. Ed. 393, 6 Sup. Ct. Rep. 69), which support the text.

Relative to the place of inspection, see Williston on Sales (2 ed.), Section 480, wherein it is said:

"Difficult questions may arise here, especially where the contract requires shipment of the goods on the buyer's order. An important line of distinction seems to be this: If the goods are delivered to the buyer, even though he immediately ships them to another destination, and it is expected that he shall do so, the general rule that the place of delivery is the place of inspection applies, unless having regard to the nature of the goods, or the way in which they are packed, it is unreasonable that the goods should be examined there. On the other hand, if the seller is to ship the goods, the place of inspection in the absence of agreement to the contrary is the destination of the goods, even though shipping directions may be given to the seller to send the goods to places other than the buyer's residence." Citing *Holt* v. *Pie,* 120 Pa. St. 425 (14 Atl. 389), which is particularly in point.

7. It is true that the title to the lumber passed to the defendant when it was delivered at Grants Pass, but it was a conditional title, subject to be defeated by failure of the seller to deliver the kind and quality of lumber agreed to be sold. Assuming that there was an acceptance of the lumber by defendant

at this point, in view of its acts of ownership over the same, there still survived the right of inspection.   We are not dealing with a case of rescission or rejection of the goods shipped.   The buyer had the right to accept the lumber and still rely upon the warranty of the seller as to quality, provided that notice was given to the seller within a reasonable time after it knew or ought to have known of the breach of warranty.   The Uniform Sales Act as embodied in Section 8212, Or. L., provides:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

That warranty of the quality of goods survives the acceptance of the goods by the purchaser, see *Feeney & Bremer Co.* v. *Stone,* 89 Or. 360 (171 Pac. 569, 174 Pac. 152); *Austin Co.* v. *Tillman Co.,* 104 Or. 541 (209 Pac. 131, 30 A. L. R. 293).

8. Plaintiffs rely strongly upon the ninth paragraph of the contract above quoted which provides that they "shall in no manner be responsible for losses suffered by the second party by virtue of resales."   We take it that it was not the intention of the parties to relieve the plaintiffs of compliance with their contract.   Plaintiffs were particularly concerned to see to it that, at all events, they would obtain the minimum price for the lumber delivered, and provided against any losses on resale due to a declining market.   It is hardly reasonable, however,

122 Or.—10

for plaintiffs to contend that they are entitled to the minimum price regardless of their failure to deliver the lumber contracted to be sold. Defendant's damage is based on loss sustained by reason of poor quality of lumber. No claim is made on account of market condition.

9, 10. The finding of the trial court that there was no breach of warranty is irrelevant under the issues as submitted by the stipulation. Indeed, the plaintiffs, in effect, admit that the lumber was not of the quality contracted to be sold, for they concede that judgment should be taken against them if defendant had right of inspection at point of final destination. While we would prefer to decide this case upon its merit, courts are not permitted to go beyond the stipulation of the parties.

The judgment of the lower court for the plaintiffs in the sum of $3,319.25 is reversed and a judgment in favor of defendant for $643.19, together with costs and disbursements, is hereby rendered.

REVERSED AND JUDGMENT ENTERED.