Argued September 6, reversed and remanded October 3, 1950

# WEBSTER ET UX. *v.* HARRIS
22 P. (2d) 644

*E. R. Woods* and *Walter T. Durgan,* of Corvallis, argued the cause and filed a brief for appellant.

*Orval N. Thompson* argued the cause for respondents. On the brief were Weatherford & Thompson, of Albany.

Before Lusk, Chief Justice, and Brand, Bailey, Hay, Latourette, and Warner, Justices.

HAY, J.

Action for damages for breach of a contract for the sale of logs.

Under date of March 7th, 1946, the plaintiff, M. M. Webster, and the defendant, Gerald Harris, made and executed an agreement in writing as follows:

"Wren, Oregon, March 7, 1946

"Gerald Harris will sell four million feet of logs, delivery at rate of 1½ million feet per year, to be delivered to M. M. Webster's sawmill located at Harris Station.

"M. M. Webster will buy said logs at market price, or woods run ceiling price and pay for said logs by lumber scale the tenth of each month for lumber marketed the previous month.

"Seller may change from pay on lumber scale to pay on log scale. Logs would be scaled as delivered at mill in lengths 16 to 56 feet long.

"M. M. Webster
"Gerald Harris"

Plaintiff Pansy Webster is the wife of plaintiff M. M. Webster. She was not a party to the agreement. We shall, for convenience, refer to plaintiff M. M. Webster as if he were sole plaintiff.

The complaint, among other matters, alleges as follows: The contract between the parties was partly in writing, as above, and partly oral. It was orally agreed that the logs referred to in the writing were to be cut from a particular tract of timber belonging to defendant. From such tract, defendant cut and delivered not in excess of 300,000 feet of merchantable logs. Defendant refused to deliver any more logs from the particular tract which was the subject of his oral agreement, although there remained 3,700,000 feet of

good merchantable timber thereon. Plaintiff has performed his part of the contract to date, and is ready, willing and able to perform the remainder. By reason of defendant's breach of contract in refusing to cut and deliver any more timber from said tract, plaintiff has suffered damages in the sum of $29,600, for which he asked judgment.

Defendant demurred to the complaint on the general ground that it failed to state facts sufficient to constitute a cause of action. The demurrer was overruled, and the defendant thereupon answered by general denial, with affirmative allegations to the effect that he has been at all times ready, willing, and able to perform his part of the contract, but has been prevented from doing so by certain specified acts of plaintiff. Because of such alleged acts, defendant claimed to have been damaged in the sum of $14,044.06, for which he asked judgment. He also asked judgment for $2,565.42, the alleged unpaid balance of the agreed price for logs actually delivered by him under the contract. Plaintiff's reply contained appropriate denials of the new matter in the answer.

Trial by jury resulted in a verdict in favor of plaintiff in the sum of $13,457.58. Judgment was entered thereon, and defendant has appealed therefrom to this court.

The defendant's chief assignment of error is the overruling of his demurrer to the complaint. He contends that the written agreement between the parties constituted an integrated contract, and that, as between the parties thereto, it is conclusively presumed, in the absence of fraud, mistake of fact, or illegality in the subject matter, that the writing contains their whole engagement.

■ "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement. An integration is the writing or writings so adopted." 1 Restatement of the Law of Contracts, p. 307, § 228.

See also 9 Wigmore on Evidence, 3rd Ed., p. 76, § 2425.

■ Consideration of the language of the written agreement leaves no doubt as to the intention of the parties. Defendant agreed to sell and plaintiff to buy four million feet of logs. Time and place of delivery, specifications as to length of logs, and price and terms of payment, are all specified. The parties have raised no question of mistake or imperfection in the writing. The writing, in our opinion, was a completely integrated contract. The alleged oral agreement pleaded by plaintiff conflicts with and contradicts the written contract. Under the latter, defendant had the right to fulfill his obligation by delivery of·logs from any source available to him from time to time as deliveries were due. The oral agreement would have confined him to one particular source of logs. *Cf. Forsyth Mfg. Co. v. Castlen,* 112 Ga. 199, 37 S. E. 485, 81 Am. St. Rep. 28, 38; *McCann v. Glynn Lumber Co.,* 199 Ga. 669, 34 S. E. 2d 839, 843. .

■ The written contract appearing on its face to be complete, and no issue having been made respecting its validity, or that it embodied a mistake or imperfection, it is to be considered as containing all of the terms of the agreement, and no evidence thereof was admissible between the parties other than the writing itself. § 2-214, O. C. L. A.; *Sund & Co. v. The Flagg & Standifer Co.,* 86 Or. 289, 302, 168 P. 300; *Marks v. Twohy*

*Bros. Co.,* 98 Or. 514, 527, 194 P. 675; *Hyland v. Oregon Agricultural Co.,* 111 Or. 212, 217, 225 P. 728. The parol evidence rule embodied in the code section just cited is not merely a rule of evidence, but is one of substantive law. *Taylor v. Wells,* 188 Or. 648, 217 P. 2d 236, 241, and cases therein cited; *Cohn v. Dunn,* 111 Conn. 342, 149 A. 851, 70 A. L. R. 740, 742. The rule obtaining when, because of ambiguous language in an instrument, the court is required to construe it, under which evidence may be received of the circumstances under which the instrument was made (§ 2-218, O. C. L. A.), has no bearing here, as the contract in suit is not ambiguous, and there is no room for judicial construction thereof. *Taylor v. Wells,* supra. Plaintiff's case was based upon the pleaded oral modification of the integrated written contract, and, such modification being inadmissible as a matter of substantive law, the complaint failed to state facts sufficient to constitute a cause of action, and the demurrer should have been sustained.

There is a further vital objection to the sufficiency of the complaint. Section 2-909, O.C.L.A., provides that an agreement which by its terms is not to be performed within a year of the making thereof "is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent". This court has held that this section of the code means exactly what it says. If the contract does not meet with the requirements of the statute it is a nullity in all respects and for all purposes. *Bagot v. Inter-Mountain Milling Co.,* 100 Or. 127, 133, 196 P. 824; *Brown v. Austin,* 102 Or. 53, 58, 201 P. 543; *Wurzweiler v. Cox,* 138 Or. 110, 113, 5 P.

2d 699; 2 Page, Law of Contracts, p. 2403, § 1400; 37 C. J. S., Statute of Frauds, p. 724, § 223. "The Oregon statute of frauds is more comprehensive in its language and more drastic in its application than most of the statutes of other states." *Craswell v. Biggs,* 160 Or. 547, 563, 86 P. 2d 71. In order to conform to the requirements of the statute, the written memorandum must be complete and must include all of the terms actually agreed upon between the parties. 4 Page, Law of Contracts, p. 3842, § 2184. The plaintiff was obliged to rely upon the alleged oral agreement that the logs were to be cut from a particular tract. The whole contract, not being one which was capable of being performed within a year from its date, was within the statute of frauds and the whole of it should have been in writing. 2 Page, op. cit., p. 2306, § 1335. The plaintiff was faced with a serious dilemma. If he should fail to plead the oral modification of the written contract, he would state no cause of action whatever. If he should plead it, the parol evidence rule would prevent him from using extrinsic evidence to prove that the writing did not comprise the complete agreement. And if it were permissible for him to use extrinsic evidence in that connection, the contract as so proved would not satisfy the statute of frauds. 4 Page, op. cit., § 2184.

 It being apparent upon the face of the complaint that the contract sued upon was within the statute of frauds and did not comply therewith, the defendant's general demurrer was sufficient to invoke that statute. *Commercial Credit Corp. v. Marden,* 155 Or. 29, 39, 62 P. 2d 573, 112 A. L. R. 931; 1 Page, op. cit., Supplement, p. 909, § 1420; 37 C. J. S., Statute of Frauds, p. 789, § 267. The record does not indicate whether or not the statute of frauds was relied upon in submission

of the general demurrer to the trial court, but in any event it was specifically raised in support of such demurrer in oral argument before this court. The objection that the complaint does not state facts sufficient to constitute a cause of action is never waived. It may be raised for the first time in the appellate court. *Wyatt v. Henderson,* 31 Or. 48, 52, 48 P. 790; *State ex rel. v. Mott,* 163 Or. 631, 637, 97 P. 2d 950. In *Ross v. Robinson,* 169 Or. 293, 314, 124 P. 2d 918, 128 P. 2d 956, such objection was not raised until the case was argued upon rehearing before this court; nevertheless we considered it.

We are of the opinion that the complaint in this case failed to state facts sufficient to constitute a cause of action. The parol evidence rule and the statute of frauds render the contract as pleaded unenforcible.

"* * * however morally deserving the plaintiffs may be, we cannot override the express mandate of the law in their interest and impose upon the defendant a liability which the legislative department of the government has explicitly said shall not exist unless it is evidenced in a certain prescribed manner."

Lueddemann v. Rudolf, 79 Or. 249, 255, 154 P. 116, 155 P. 172.

Defendant's counterclaims consisted of (1) claims for damages in the aggregate sum of $14,044.06, comprising damages for alleged delay in making preparation to receive logs, damages alleged to have been caused by a shutdown of plaintiff's sawmill, and certain items of additional expense incurred by defendant, and (2) alleged unpaid balances of contract price of logs delivered. Item (1) was withdrawn from the jury by the court, and no error is assigned in that connection. It is impossible to tell, from the amount of the

verdict or otherwise, what disposition of the remaining counterclaims was made by the jury. Reversal of the judgment for plaintiff, under such circumstances, necessitates remand of the cause for retrial upon the remaining counterclaims. We, therefore, discuss certain alleged errors asserted by defendant in regard thereto:

The following instruction is assigned as error:

"* * * and if some logs that were merchantable were intermingled with logs unfit for any reason to be manufactured into lumber and the plaintiffs refused to saw them and left them for the account of the defendant, the defendant cannot recover in this case any sum for such logs and if you find that the plaintiffs have paid the defendant as much or more than the market value of the logs actually used by them, or the parts of logs used by them, then you should allow the defendant nothing on this part of his counterclaim."

■■ The contract contained no provision as to the quality of logs to be sold. It did provide, however, that they were to be delivered in "mill lengths" at M. M. Webster's sawmill at Harris Station. This implies, we think, that they were to be logs suitable to be cut in a sawmill. 38 C. J., Logs and Logging, § 1; *In re Gosch,* 121 F. 604, 605; *Taylor v. Towns,* 65 Ga. App. 6, 14 S. E. 2d 487, 488. Moreover, the terms of the contract apprised the defendant that the logs were being purchased as sawlogs, and it was apparent from the nature of the transaction that the buyer could not have been expected to examine the logs before delivery. Under the circumstances, the buyer was obliged to rely upon the seller's skill and judgment in the selection of logs to fill the contract, and we hold that there was

an implied warranty that the logs selected would be reasonably suitable to be sawed into lumber. 4 Williston on Contracts, Rev. Ed., p. 2721, § 989. There was, besides, an implied warranty that the logs would be merchantable. § 71-115 (1), O. C. L. A.; *Kitterman v. Eagle Pine Co.*, 122 Or. 137, 142, 257 P. 815; 4 Williston, op. cit., § 984; *Murchie v. Cornell,* 155 Mass. 60, 63, 29 N. E. 207, 14 L. R. A. 492, 31 Am. St. Rep. 526. Cf. 46 Am. Jur., Sales, p. 524, § 341, text and note 6.

 The instruction complained of was erroneous. No doubt, in any logging operation, some unmerchantable or partially unmerchantable logs will be cut and brought in by the loggers. The contract required the logs to be delivered at the sawmill, and therefore title thereto did not pass to the buyer until the logs were so delivered. *Wade v. Johnson,* 111 Or. 468, 476, 227 P. 466. The buyer had the privilege of inspecting the logs when delivered. He had the duty to so inspect them, to reject such of them as did not comply with the implied warranties of suitability and merchantability, and to notify the seller with reasonable promptitude of such rejection. *Stearns Salt & Lumber Co. v. Dennis Lumber Co.,* 188 Mich. 700, 154 N. W. 91, 2 A. L. R. 638, 640, and annotation p. 643. The instruction was confusing. The jury might have implied from it that, if "some" merchantable logs were intermingled with "some" unmerchantable logs, the seller could not recover for the merchantable ones unless the buyer actually used them. We think that the buyer was obliged to accept and to pay for all merchantable logs delivered to him, except such as may have been intermingled with so great a quantity of unmerchantable logs that the buyer could not reasonably have been required to separate them. As to such, he should have

notified the seller of the situation with reasonable promptitude, and thereafter should have held the intermingled logs for the seller's account. Liability of the buyer to pay for logs did not depend upon whether or not he actually used them, but upon whether or not the logs complied with the specifications and the warranties, express or implied, of the contract.

The following instruction was given, and the giving assigned as error:

"I now instruct you that the question of damages or claim for damages on the part of the defendant is withdrawn from your consideration, and you are to give that no attention whatever. However, in the defendant's amended answer, there is set up a claim for the unpaid portion of certain logs delivered to the plaintiff and you will find that claim set forth in Paragraph XI of the amended answer. This claim for any unpaid balance for logs delivered to the plaintiffs is denied by the plaintiffs in their reply. You are also instructed by the court that in the prayer of the amended answer you are not to consider the item claimed as damages therein."

The only exception taken to the instruction was to the language, which was thought to be so involved that the jury would have difficulty in determining what claim was withdrawn and what submitted. The instruction was, we think, faulty in that respect.

For the errors hereinabove set forth, the judgment appealed from is reversed, and the cause is remanded for retrial upon the defendant's counterclaim for alleged unpaid balances of the purchase price of logs alleged to have been actually delivered by him under the contract, and for that purpose only.