# CASTLE SAWMILLS, INC. *v.* STATE TAX COMMISSION

Douglas J. White, Jr., Portland, and Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, submitted briefs for plaintiff.

Gerald F. Bartz, Assistant Attorney General, Salem, and Robert Y. Thornton, Attorney General, Salem, submitted a brief for defendant.

Decision for defendant rendered May 4, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside defendant's Opinion and Order No. I-62-34, which affirmed defendant's assessment of corporation excise tax against plaintiff for its fiscal year ending April 30, 1958. The parties submitted the case on a written stipulation of facts.

The principal issue is whether intangible income arising out of plaintiff's discount purchase of its obligations has an Oregon situs for corporation excise taxation. The parties have stipulated that this discount transaction resulted in income taxable somewhere to plaintiff in its 1958 tax year.

An Oregon corporation with its registered office and agent in Portland, plaintiff now is wholly-owned by a New York company, A. C. Dutton Lumber Corporation. Some years before 1957, plaintiff borrowed approximately $526,000 from the Bank of California to build and operate a sawmill at Crescent City, California. It later defaulted the promissory notes which evidence this debt and the bank forced the guarantor of these notes to purchase them. Plaintiff ceased operating its Crescent City sawmill, its only operating asset, and during its fiscal years 1957 and 1958 it leased the sawmill to its parent corporation. Presumably to protect its leasehold, plaintiff's parent acquired plaintiff's defaulted notes and all plaintiff's stock prior to October 8, 1957. On that date, when the unpaid balance was $370,500, its parent corporation sold plaintiff its notes for $225,996.38, a discount of $144,503.62.

The written stipulation states:

"No part of the proceeds represented by the above-described notes were used in the State of Oregon; all such proceeds were used entirely in California for the construction and operation of the California sawmill.

"* * * * *

"During the tax year in question Castle's contacts with the State of Oregon were as follows: The annual meeting of its board of directors and stockholders was held in Portland; it had a registered office and agent in Oregon, as required by law, and it retained an Oregon accountant to perform certain bookkeeping services. The accountant was not an employee of Castle but was an independent certified public accountant retained to perform specific accounting services.

"During the tax year, the sole business of Castle consisted of leasing a sawmill and facilities in the State of California to the A. C. Dutton Lumber Corp. During the tax year, Castle had no employees in the State of Oregon; it maintained no bank accounts in this state; it operated no business, made no sales or purchases and owned, leased, possessed and held no assets, fixed, current or otherwise, in the State of Oregon. The promissory notes which Castle purchased at a discount were not employed as capital or current assets of Castle's business within the State of Oregon. No part of the proceeds from the above described loans were used in the State of Oregon; they were used exclusively for the construction of the California facilities. The notes themselves, during the year in question, were located in California."

Plaintiff reported the discount as income on its 1958 California and federal tax returns and paid tax thereon. It also reported the discount on its Oregon corporation excise tax return but allocated all its

income, including the discount, to states other than Oregon. It paid only the minimum Oregon corporation excise tax.

Defendant assessed against plaintiff a $8,660.22 deficiency in 1958 corporation excise taxes. Affirming this assessment in its order, defendant held that the situs of the notes was Oregon, plaintiff's domiciliary state, and that the intangible income from the purchase of these notes was non-apportionable and was all taxable to plaintiff in Oregon. Plaintiff claims that this intangible income had its business and only situs in California and that Oregon's incorporation of plaintiff, without a further Oregon connection with plaintiff's business activity, did not make Oregon a situs for plaintiff's taxation.

■ As the state of domicile, Oregon clearly has the power to tax plaintiff's intangible income. *Cream of Wheat Co. v. County of Grand Forks*, 253 US 325, 40 S Ct 558, 64 L Ed 931 (1920). Whether Oregon has exercised this power is a question of statutory construction. The issue is whether Oregon has taxed plaintiff's intangible income, not whether it can.

Plaintiff filed its return on the apportionment method under ORS 317.180. This statute reads:

"317.180. (1) If the gross income of a corporation is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state. The commission shall have the power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state.

(2) The provisions of subsection (1) dealing

with the apportionment of income earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of the income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to its own income and explain that basis in full in its return. If approved by the tax commission, that method will be accepted as the basis of allocation."

Purportedly acting under this statute, plaintiff apportioned its discount income to California as income from business done in that state and not in Oregon. The California tax rate was only two-thirds of the Oregon rate.

Defendant established a method of apportionment by rules and regulations implementing ORS 317.180. STC Reg 7.180. The second paragraph of subsection 7.180(1)—(B), as it existed in plaintiff's 1958 fiscal year, dealt with intangible income as follows:

"* * * Income from intangible personal property which is not a part of or connected with the unitary business shall be assigned to the situs of such intangible personal property. The income from tangible and intangible personal property which is a part of or connected with the unitary business shall constitute apportionable income. In the case of corporations domiciled in Oregon, in addition to the portion of the unitary income attributable to Oregon, there shall also be included as nonapportionable income, interest on notes, bonds, and other evidences of indebtedness, royalties from patents or copyrights not used in the unitary business, dividends on stock, and all other income from intangible personal property, including gains derived from the sale or other disposition of stocks, bonds and other intangible assets. * * *"

Defendant contends that this regulation properly makes plaintiff's intangible discount income taxable in Oregon as nonapportionable income.

■ The regulation applies the rule that the situs of personal property follows its owner's person. A corporation's person is always in the state of its incorporation. "It must dwell in the place of its creation, and cannot migrate to another sovereignty." Chief Justice Taney in *Bank of Augusta v. Earle,* 38 US 519, 588, 10 L Ed 274, 307 (1839), quoted in *Cream of Wheat Co. v. County of Grand Forks, supra.* This situs rule is a legal fiction. *Endicott, Johnson & Co. v. Multnomah County,* 96 Or 679, 684, 190 P 1109 (1920). So also is the legal recognition of any situs for a chose in action. Intangible property has no physical presence at any place. Its situs can only be determined by invoking a legal fiction, by assigning it an arbitrary situs. The vintage and necessity of this rule assigning a situs to intangible property raise it from a fiction to the substance of a rule of law. *Mobilia sequuntur personam*—and has since the days of ancient Rome.

■ Defendant has administered the excise tax in the manner set forth in its regulation for a quarter of a century. Any doubt that the regulation correctly interprets the statute should be resolved in its favor. In the absence of judicial construction, administrative construction is informative, and unless clearly at variance with the express terms of the statute, is entitled to respect. *Jarvie v. Commission,* 1 OTR 1 (1962); *Pacific Supply Coop. v. Commission,* 224 Or 556, 560, 356 P2d 939 (1960). Such administrative determinations which have remained undisturbed for a reasonable period gain weight with the passage of time. *Utgard v. Commission,* 1 OTR 274 (1963), aff'd

237 Or 596, 390 P2d 182 (1964); *Lafferty v. New-berry*, 200 Or 685, 268 P2d 589 (1934).

■ In seeking to void defendant's regulation, plaintiff presents three arguments. First, plaintiff points out that some intangible property acquires a situs other than its owner's domicile when it becomes an integral part of its owner's business elsewhere. *Endicott, Johnson & Co. v. Multnomah County, supra*. Under this rule, personal property may acquire either a "commercial" situs or a "business" situs. But such commercial or business situs does not destroy the situs in its owner's domiciliary state. The domiciliary state may still subject this property to tax. Double taxation of property because it has two or three tax situs does not violate the Federal Constitution. *Cream of Wheat Co. v. County of Grand Forks, supra*.

■ Secondly, in an attempt to establish a rule that Oregon's apportionment formula assigns intangible income to the situs of the transaction out of which the intangible arose, plaintiff cites three cases. *Hines Lumber Co. v. Galloway*, 175 Or 524, 533-35, 154 P2d 539 (1944); *Hines Lumber Co. v. State Tax Commission*, 215 Or 453, 469, 336 P2d 75 (1959); *Dutton Lumber Corp. v. State Tax Commission*, 228 Or 525, 533-34, 365 P2d 867 (1961). None of these cases so holds. Citation of them begs the question. These cases hold merely that a corporation's excise tax pays for its privilege of earning a net income in Oregon and that liability rests solely upon income earned in this state. If the subject intangible income has its owner's Oregon situs, it is earned at that situs.

■ Thirdly, plaintiff contends that only income from a "source within this state" is taxable under the excise tax. Nowhere by statute or commission

regulation is Oregon's excise tax limited to income from such source. Missouri cases interpreting this phrase cited by plaintiff are not here applicable. *Union Electric Co.'s Petition,* 349 Mo 73, 161 SW2d 968, 970-71, 143 ALR 141 (1942); *A. P. Green Fire Brick Co. v. Missouri State Tax Com'n,* 277 SW2d 544, 547 (Mo 1955). Furthermore, even if such language were read into the Corporation Excise Tax Act or borrowed from the Corporation Income Tax Act, the result would not change. The parties stipulated that plaintiff's discount income arose from plaintiff's purchase of its own notes. These notes in the hands of plaintiff's parent had a possible business situs in California and a domiciliary and commercial situs at the parent's home office in Poughkeepsie, New York. When plaintiff purchased them, their situs changed to a situs attributable through plaintiff. If the situs of the notes rather than the debt determines the discounts' situs, both the regulation and the general law assign plaintiff's situs in Oregon to these notes. In reality, the debt evidenced by these notes was extinguished upon plaintiff's acquisition of them. Plaintiff did not acquire an asset. Rather it realized income from extinguishing a liability. Such income clearly is intangible income, does not have a physically fixed situs, and assumes plaintiff's situs under both the general law and the tax commission's regulations. The source of the income arising from either notes or debt had no physical situs and its situs then was plaintiff's situs in Oregon.

What plaintiff has really attempted is to assign to the discount income the situs of the transaction in which the notes were created. But plaintiff was the maker, not the holder, of these notes. Their situs followed not the debtor, plaintiff, but the various

holders. Debts are not the debtor's property. Plaintiff's notes acquired no situs through plaintiff until it purchased them. When plaintiff purchased them, they became general assets of plaintiff. When plaintiff bought them, it no longer operated a business in California. It merely leased a property which it owned there. Upon its purchase of its notes, plaintiff extinguished a general liability. The parties have stipulated that, by doing so at less than face value, plaintiff earned taxable income. At no time had the notes acquired a California situs through plaintiff. That they may have acquired a situs in California theretofore through another, or others, is immaterial. Any situs so acquired had to be acquired under a legal fiction because, being an intangible property, they had no inherent situs. Any situs so acquired by legal fiction did not, and could not, carry beyond the existence of the fact giving rise to the fiction, the ownership of the intangible property. Because at the time it purchased the notes, plaintiff no longer operated its California sawmill, but merely leased it, plaintiff had no business situs in California to which these notes could be assigned and these notes did not then become an integral part of any active business operation there.

■ This court finds that the tax commission's regulation, Reg. 7.180(1)—(B), properly establishes plaintiff's discount income as intangible income attributable to Oregon and nonapportionable under the allocation formula. The regulation does not violate either the letter or the spirit of ORS 317.180, which expressly directs its promulgation.

As an alternative issue, plaintiff contends that defendant should have made its additional assessment,

if at all, under the Corporation Income Tax Act of 1955, ORS Chapter 318, rather than the Corporation Excise Tax Act, ORS Chapter 317. Plaintiff relies on defendant's regulation 8.020(1) which reads, in part:

> "* * * A foreign or domestic corporation which is authorized to do business within this state, having qualified with the Corporation Commissioner, which is not 'doing business,' but nevertheless receives income ascribable to Oregon, is subject to ORS chapter 318. * * *"

Plaintiff claims to be a domestic corporation not "doing business" within this state because its only business is the leasing of its California sawmill. It cites defendant's Legal Department Abstract, LDA OF 1410, March 22, 1957, which ruled that the rental income of a domestic stevedoring corporation was subject to Oregon's corporation excise tax, but that its stevedoring income earned in interstate commerce was subject to the corporation income tax.

ORS Chapter 318 was enacted to subject to state taxation corporation income from interstate commerce which is not subject to corporation excise tax under *Spector Motor Service, Inc. v. O'Connor,* 340 US 602, 71 S Ct 508, 95 L Ed 573 (1951). *Smith Kline & French Laboratories v. Commission,* 1 OTR 532 (1964). Defendant's regulation 8.010 merely sets forth this statutory purpose. It cannot alter the legislative act. The statute imposes the tax on a corporation's Oregon income to the extent that its Oregon income is not subject to the corporation excise tax. ORS 318.010. This statute does not create a loophole through which a corporation normally taxable in Oregon may slip, but rather it subjects to tax that Oregon corporate

income which otherwise would slip through this state's fiscal fingers because of *Spector*. Plaintiff's leasing of its Crescent City sawmill is not interstate commerce. *United Shoe Machinery Corp. v. United States*, 258 US 451, 465, 42 S Ct 363, 66 L ed 708 (1922). Its income is not immunized from Oregon excise taxation by *Spector*. Its intangible income is subject to excise taxation at plaintiff's domicile in Oregon. Consequently, by enacting ORS Chapter 318, the legislature intended neither to subject plaintiff's Oregon income to the corporation income tax nor to exempt plaintiff altogether from Oregon taxation.

The vagueness of plaintiff's separate identity causes much of the difficulty in this case. It arises because plaintiff, a wholly-owned subsidiary, purchased its notes at a discount from its parent corporation, which at the time was leasing plaintiff's only asset, its Crescent City sawmill. The parties stipulated that this discount was income under ORS Chapter 317. This court does not have all the necessary facts before it but it suspects that the discount may be nothing more than a nontaxable capital contribution by the sole shareholder. See Eustice, "Cancellation of Indebtedness and the Federal Income Tax: A Problem of Creeping Confusion," 14 Tax L. Rev. 225, 250 (1959). However, since the parties stipulated that it is income, this issue is not before this court and it cannot decide it. *Kitterman v. Eagle Pine Company,* 122 Or 137, 146, 257 P 815 (1927).

■ In summation, this court finds that plaintiff's discount income was intangible income of a domiciliary corporation and had a tax situs in Oregon, that for plaintiff's 1958 fiscal year, such income was properly taxed as nonapportionable Oregon income under the apportionment formula of ORS 317.180 and Reg

7.180(1)—(B), and that, as a corporation not engaged in interstate commerce and domiciled in Oregon, plaintiff was taxable under the Corporation Excise Tax Act of 1929 (ORS ch 317) and not under the Corporation Income Tax Act of 1955 (ORS ch 318).

Defendant will prepare a decree under Rule 38 in accordance with this decision, affirming its assessment against plaintiff and allowing defendant its costs and disbursements.