IN THE OREGON TAX COURT
REGULAR DIVISION

NORTH HARBOUR CORPORATION,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*

*and*

MULTNOMAH COUNTY ASSESSOR,
*Intervenor-Defendant.*

(TC 4540)

W. Scott Phinney, Lake Oswego, filed the motion and argued the cause for Plaintiff (taxpayer).

Marilyn Harbur, Assistant Attorney General, Department of Justice, Salem, filed a brief in support of Intervenor-Defendant's, Multnomah County Assessor, motion for summary judgment and argued for Defendant (the department).

John Thomas, Multnomah County Assistant County Counsel, Portland, filed the motion and argued the cause for Intervenor-Defendant (the county).

Decision for Plaintiff rendered August 20, 2002.

**HENRY C. BREITHAUPT, Judge.**

Plaintiff (taxpayer) appeals from a Decision of the Magistrate Division denying an application for exemption pursuant to ORS 307.330[1] for the 1999-2000 tax year. Multnomah County (the county) intervened. Defendant Department of Revenue (the department) adopted the arguments submitted by the county.

## FACTS

The subject property is a 32-unit condominium project. For the 1999-2000 tax year, taxpayer timely filed an application for exemption under ORS 307.330. The county denied the application, finding that the project was "not intended 'primarily for the furtherance of the production of income.' " Taxpayer timely filed an appeal with the Magistrate Division, and the case was submitted to the court on

---

[1] All references to the Oregon Revised Statutes (ORS) are to 1999.

cross motions for summary judgment. The Magistrate Division found that the exemption granted by ORS 307.330 contemplates the use of the property will provide an income stream, therefore the exemption does not apply to taxpayer's condominium project because the sale of the units will result in a one-time realization of income. Taxpayer requests this court grant the property exemption under ORS 307.330. The department and county request an affirmation of the magistrate's decision.

The parties agree that the property was under construction and not in use or occupancy on January 1, 1999. Further, the parties agree that the property was under construction for more than one year and that the units are constructed to be offered for sale. Thus, the parties stipulate that all but one of the requirements under ORS 307.330 have been met by the property at issue.

## ISSUE

Does the limited exemption of ORS 307.330 apply to property, such as a condominium development, that is being built by a developer for sale to purchasers who may live in the property or rent the property to others?

## ANALYSIS

New buildings or structures may qualify for limited exemption from property taxation if the requirements of ORS 307.330 are met. The statute provides, in pertinent part:

"(1) Except for property centrally assessed by the Department of Revenue, **each new building or structure** or addition to an existing building or structure **is exempt from taxation** for each assessment year of not more than two consecutive years if the building, structure or addition:

"(a) Is in the process of construction on January 1;

"(b) Is not in use or occupancy on January 1;

"(c) Has not been in use or occupancy at any time proper to such January 1 date;

"(d) Is **being constructed in furtherance of the production of income**; and

"(e) Is, in the case of nonmanufacturing facilities, to be first use or occupied not less than one year from the time construction commences."

ORS 307.330 (emphasis added).[2] The parties disagree as to whether the condominium project was "constructed in furtherance of the production of income." ORS 307.330(1)(d).

The department filed a brief in support of the county's motion for summary judgment and adopted the arguments of the county; therefore, the court's analysis will refer to the arguments of both the department and the county as arguments of the county. In order for property to qualify for the benefits of ORS 307.330, the county argues that the intended function of the property must be to produce a stream of income rather than a one-time realization of income from the sale of the property. Applying that reasoning, the county observes that taxpayer constructed the condominium complex in question here in order to realize a one-time profit from sales of units rather than a stream of income such as rental income from units leased out in an apartment building.[3] Therefore, the county concludes that ORS 307.330 does not apply.

Taxpayer contends that the statute does not contain the limitations suggested by the county and that property built for sale may be "property constructed in furtherance of the production of income." In taxpayer's view, only two classes of property are excluded from the statute: (1) property constructed by an owner for residential occupancy by the owner, and (2) nonmanufacturing facilities of any kind constructed in less than one year.

The parties submitted briefs addressing in detail prior decisions on constructional rules for exemption statutes as well as the legislative history of ORS 307.330. Oregon follows the rule that "tax exemption statutes should be strictly construed in favor of the state and against the taxpayer."

_____

[2] Although the statutory title refers to "commercial facilities under construction," such titles are ignored in construction of the statute. ORS 174.540.

[3] The county concedes that an apartment building would be property constructed in furtherance of the production of income. The parties agree that property used for residential housing is not, for that reason alone, excluded from ORS 307.330.

*Mult. School of Bible v. Mult. Co.,* 218 Or 19, 27, 343 P2d 893 (1959). That rule of construction is paraphrased in later cases as "strict but reasonable." *Eman. Luth. Char. Bd. v. Dept. of Rev.,* 263 Or 287, 291, 502 P2d 251 (1972). Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent. *Mult. School of Bible,* 218 Or at 27-28. That approach is consistent with the method of statutory construction set forth in *PGE v. Bureau of Labor and Industries,* 317 Or 606, 859 P2d 1143 (1993).

In light of the directives in *PGE,* it is important to observe that if the intent of the legislature can be determined by use of the techniques described in *PGE,* that intent must be followed, regardless of whether someone would or would not describe the construction as "strict." That conclusion is consistent with what the court has stated:

> "* * * Strict but reasonable means merely that the statute will be construed reasonably to ascertain legislative intent, but in case of doubt will be construed against the taxpayer."

*Eman. Luth. Char. Bd.* at 291.

The rule of "strict but reasonable" construction serves a function similar to allocation of the burden of proof. The "strict but reasonable" rule serves as a tie breaker, in favor of taxation, where no legislative intent can be discerned. However, no party bears a relatively greater burden to prove the construction it offers, and if a legislative intent can be discerned, that intent must be effectuated. That conclusion is consistent with the precept that the claimant of an exemption is required to bring itself within the terms of the statute. *Mercy Medical Center, Inc. v. Dept. of Rev.,* 12 OTR 305 (1992).

The question becomes whether the text of ORS 307.330 generally, and subsection (1)(d) specifically, requires that property be constructed to produce an ongoing stream of income. The plain text of the statute is the starting point for interpretation and the best evidence of legislative intent. *PGE,* 317 Or at 610. To qualify for the limited exemption of

ORS 307.330, property must be "constructed in the further-
ance of the production of income." ORS 307.330(1)(d). The
court must follow the statutory enjoinder "not to insert what
has been omitted, or to omit what has been inserted." ORS
174.010. Therefore, when interpreting ORS 307.330, focusing
in particular on the phrase "production of income" in subsec-
tion (1)(d), the court must not insert requirements omitted by
the legislature. The text of the statute requires only that con-
struction be undertaken in an effort to produce **income**, with
no further specification. The parties have not directed the
court to any definition of income, within the statute or other-
wise, that excludes one-time income from the sale of prop-
erty. Therefore, the court will not narrowly construe the stat-
ute without carefully proceeding through the other levels of
analysis prescribed by *PGE*.

Still within the first level of analysis, the court also
considers the context of the statute, which includes prior ver-
sions of the statute, applicable case law interpreting the stat-
ute, and other related statutes. *PGE*, 317 Or at 611; *Owens v.
Maass*, 323 Or 430, 435, 918 P2d 808 (1996).

*Prior Versions of the Statute*

ORS 307.330 was initially adopted in 1959 and
applied only to property that was "* * * constructed primarily
for use in manufacturing, processing, or assembling materi-
als into products for purposes of sale." Or Laws 1959, ch 246,
§ 1(a). As originally adopted, ORS 307.330 specifically looked
to what use would be made of the property after construction
was complete, and only the limited types of manufacturing
uses specified in the statute qualified for exemption.

■    In 1961, the provisions of ORS 307.330 were liberal-
ized, and the focus of the statute and test for exemption
shifted from the use of the property after construction to the
purpose of construction in the first instance. Prior to the 1961
revision, a property under construction qualified for exemp-
tion if it was to be "use[d] in manufacturing processing or
assembling." ORS 307.330 (1959). That use test for exemp-
tion was replaced in 1961 with the requirement that the pur-
pose of the building under construction be "in furtherance of
the production of income." ORS 307.330(1)(d) (1961). After
1961, the post construction use was relevant only in that

structures used in a particular way, *e.g.*, manufacturing, benefitted from special treatment even though they were constructed in less than one year. Thus, the use of the property was replaced by the purpose of construction as the test for the limited exemption of ORS 307.330. That shift in focus of the statute, from the use of the completed building to the purpose of the construction, is more supportive of taxpayer's position.

*Applicable Case Law*

The courts have previously construed ORS 307.330. However, prior decisions have focused primarily on the use requirements of the statute, not the "production of income" requirement of subsection (1)(d) at issue in this case. In *Bain v. Dept. of Rev.*, 293 Or 163, 165, 646 P2d 12 (1982), the sole question before the court was whether a salmon hatchery qualified as a "manufacturing" facility for purposes of the tax exemption provided in ORS 307.330 and ORS 307.340. The court's examination of the legislative history of ORS 307.330 focused on the purpose of the exemption and the meaning of "manufacturing" and "nonmanufacturing" in the statute. *Id.* at 170-73. The court concluded that the nonmanufacturing provision of ORS 307.330(1)(e) "was meant to refer to income-producing enterprises other than manufacturing, such as commerce, agriculture, mining, finance, insurance, real estate and services." *Id.* at 172. Because the parties agreed that the property met the other requirements of ORS 307.330, including the "production of income" requirement of subsection (1)(d), the court did not consider the meaning of "income" in the statute. Rather, because the salmon hatchery was constructed in less than one year, the focus of the court was on whether the building met the **use** requirement of manufacturing to qualify for the limited exemption of ORS 307.330. The court went on to conclude that a salmon hatchery is "sufficiently akin to a manufacturing facility to bring it within the general tax exemption provided by ORS 307.330(1)."

*Related Statutes*

Considering a somewhat broader context, ORS 307.330 was adopted in 1959 and amended in 1961 within a context of taxation statutes that provide an indication of what meaning is to be given to the word "income." Because

"income" was then and is now a key element within the tax structure of the state, it is appropriate for the court to consider the meaning of the word "income" as it was used in both property and income tax statutes. In the 1959 and 1961 editions of Oregon Revised Statutes, "gross income" was defined, for income tax purposes, as including gains from sales or dealings in property. *See* ORS 316.105 (1959). More importantly, Oregon income tax statutes prior to and at the time of the 1959 adoption and 1961 amendment to ORS 307.330 included special attention to certain deductions for expenses:

> "* * * for the **production** or collection of **income** subject to taxation under this chapter, or for the management, conservation or maintenance of property held for the **production of such income**."

ORS 316.305(3) (1959 Replacement Part) (emphasis added). Related regulations of the Oregon State Tax Commission provided:

> "The term '**income**' for the purpose of ORS 316.305(3) * * * is not confined to recurring income but **applies as well to gains from the disposition of property**."

Oregon State Tax Commission Regulation 6.305(3)-(B) (1959) (emphasis added).

■     Those materials from both the legislature and the administrative predecessor to the department indicate an understanding that "income" was not limited to periodic or recurring items of income as urged by the county. Contrary to the county's argument in the brief, the context within which the 1961 amendments to ORS 307.330 occurred indicates that the words "production of income" were not limited to periodic or recurring items.

The court also notes that prior administrative construction of ORS 307.330 by the department is inconsistent with the argument of the county. In Opinion and Order No. VL 74-250 relating to the appeal of *American Condominium Homes, Inc. and Others*, the county attempted to assess a partially completed multi-unit condominium tower.[4] The

---

[4] Both the county and the department attempt to distance themselves from the reasoning of the Opinion and Order in *American Condominium Homes*, arguing that the Opinion and Order is not binding on this court. Although that is true, past

county argued, then as now, that gains on sale could not be "income" for purposes of ORS 307.330 because such gains were not "periodic benefits or returns." Finding that the common meaning of the word "income" included one-time gains as well as periodic receipts, the department allowed the ORS 307.330 exemption for the condominium project. Neither the county nor the department brought to the court's attention any department decision or rule that indicates the department, prior to this proceeding, abandoned the analysis or conclusions contained in the *American Condominium Homes* Opinion and Order.

*Legislative History*

■        Because the phrase "production of income" and specifically the word "income" is not defined in the statute and, even after consideration of the text and context of the statute, is arguably susceptible to varying interpretations, the court will also discuss the legislative history of ORS 307.330. *PGE,* 317 Or at 612. Considering the legislative history of the 1961 amendments to ORS 307.330 along with the text and context makes clear that the legislature did not intend to limit the exemption to only those buildings that will produce an ongoing stream of income to the person constructing the building.

        A construction of ORS 307.330 that includes in the exemption property being built for sale is consistent with the testimony before and the deliberation of the 1961 legislature, all of which culminated in a substantial extension of the scope of ORS 307.330. The broad reach of ORS 307.330 as amended was recognized by Carlisle Roberts, a former judge of this court who, as an assistant attorney general, was active in the drafting of the 1961 amendments to ORS 307.330. Roberts' draft language for the 1961 revision referred to property "constructed in furtherance of the production of income *which is subject to tax under the provision of ORS chapters 316 and 317.*" Minutes, Senate Taxation Committee, SB 416, Mar 17, 1961, 1. At Roberts' suggestion, an amendment striking the italicized text, thus making the definition of income

administrative construction and applications may be of assistance to the court. *See Castle Sawmills, Inc. v. Commission,* 1 OTR 571, 577 (1964) (noting that administrative determinations are informative and entitled to consideration).

broader, was unanimously adopted by the Committee. *Id.* Its adoption indicates that the legislature did not intend a narrow scope for the word "income."

The legislative history also evinces the legislature's intent to stimulate investment and construction, both because of the benefits of completed facilities and because of the economic stimulus of the construction activity itself. *See* Testimony, House Committee on Taxation, SB 416, April 19, 1961 (Statement of the Department of Planning and Development). The legislature also recognized that subjecting property to taxation before it produces income is a disincentive to economic activity. Minutes, House Committee on Taxation, SB 416, April 19, 1961, 4. Relief from that disincentive was a particular legislative concern. Legislative concern with low cash-flow during construction applies equally in the case of buildings built for sale as it does for buildings built for lease or use in business.

■ A number of witnesses and legislators focused on the function of the proposed amendments to the statute in broadly encouraging general economic development. Indeed, one witness before the 1961 legislature regarded the liberalizing amendments as so broad that the only property excluded would be personal residences built for the owner. Testimony, House Committee on Taxation, SB 416, April 19, 1961, 4 (statement of Commissioner Dean Ellis, Oregon State Tax Commission).[5] That view is consistent with this court's finding that the text of ORS 307.330 only requires that construction be undertaken in an effort to produce income, which may be a gain from sale of the property.

---

[5] The county urges the court to heavily discount that testimony as it was given by an opponent of the liberalizing amendments and appears (to the county) to be an exaggeration designed to cause the legislature to reject the amendments. The witness was Commissioner Dean Ellis of the State Tax Commission. Minutes, House Committee on Taxation, SB 416, April 19, 1961, 4. That person had taken an oath to faithfully discharge the duties of his office. ORS 306.200 (1959). The court must assume he engaged in a truthful and properly motivated presentation to the legislature. Further, the court notes that is consistent with the fact that the department previously received legal advice from its own counsel that quotes that very testimony without calling it into question. *See* Letter of Advice dated April 10, 1972, to Lincoln County Assessor (quoting testimony of Commissioner Dean Ellis concluding that the 1961 amendments would cover every type of property); *see also* Oregon Dept. of Rev., Property Tax Law Abstract, ORS 307.330, OF 1521-V, Apr 10, 1972.

## CONCLUSION

In summary, the legislature chose to broadly describe construction that qualifies for exemption, *i.e.*, "each new building or structure," and chose to limit only the date and specific periods of construction during which a project may be exempt from property taxation. Further, the general legislative context and the particular drafting history of the use of the word "income" in this statute evidences an intent to have broad application, not the narrow and limited application urged by the county. The legislature gave no indication that speculative builders, those building to sell, were not constructing "in furtherance of the production of income" and the department apparently has not, until now, suggested such a construction be applied by the counties over which it has supervisory authority.

This court will not insert a requirement that the income referred to in ORS 307.330(1)(d) must be ongoing where the legislature has not stated such a requirement. The court holds that ORS 307.330(1)(d) applies to any property that is built to produce income, whether from the one-time sale of property or an ongoing stream of income from lease or use in business. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted.

IT IS FURTHER ORDERED that Intervenor-Defendant's Motion for Summary Judgement is denied. Costs to neither party.