ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT
This matter is before the court on cross-motions for partial summary judgment on the issue of whether Plaintiff qualifies for property tax exemption under ORS 307.130 as a charitable institution. Plaintiff is represented by Robert T. Manicke, Stoel Rives LLP. Defendant is represented by Jed R. Tomkins, Assistant County Counsel.
 I. STATEMENT OF FACTS
Plaintiff seeks property tax exemption, as a charitable institution under ORS 307.130, for the personal property it owns and the real property it leases from Portland State University. The tax year at issue is 2006-07, and the appeal involves property identified by Accounts R246263 and R246264. The parties agree to the following facts.
The subject property is used by Plaintiff to operate an on-campus college bookstore for the benefit and convenience of the students, faculty, and staff of Portland State University. (Stipulation of Facts (SP) at 1, para. 2.) Plaintiff originally operated as a student-owned cooperative bookstore, and was a membership organization open to students, faculty, staff, and alumni and governed by a volunteer board of directors made up of students, faculty, and alumni. (SF at 2, 3, para. 4 a, d, e.) The cooperative paid dividends to its members based on net profits. (SF at 3, para. 4 f.) *Page 2 
In 2005, the board of directors determined that reorganization as a nonprofit corporation was in the best interests of the students of Portland State University, and, as a result, Plaintiff acquired all of the Cooperative's assets and dissolved the Cooperative. (SF at 3, para. 4 g.) On March 18, 2005, Plaintiff was formed as an Oregon nonprofit corporation. (Id., para. 4 h.) Plaintiff's June 21, 2005, application for exemption from federal income taxation pursuant to section 501(c)(3) of the Internal Revenue Code was granted July 20, 2006. (Id., para. 4 i, k.)
Plaintiff applied to Defendant for real and personal property tax exemptions on March 31, 2006, and Defendant denied Plaintiff's application on October 4, 2006. (Id., para. 4 j, m.) Plaintiff timely appealed, requesting exemption from Oregon property tax. (Ptf's Compl at 1.) Defendant filed an Answer requesting that the court sustain the denial.
Portland State is a public institution that is part of the Department of Higher Education, also known as the Oregon University System, an instrumentality or division of the State of Oregon. (SF at 4, para. 5;see ORS 351.010 and ORS 352.063 to 352.074.) Plaintiff's mission is to support the education of students of Portland State University. (SF at 4, para. 9.) All of Plaintiff's activities are limited to the maintenance and operation of its college bookstore for the benefit and convenience of the students, faculty, and staff of Portland State University. (Id., para. 10.) Plaintiff's principal function is to provide sufficient quantities of textbooks and course related materials for the courses offered by Portland State University, in a timely fashion each semester. (Id., para. 11.)
The following factual information is either mutually agreed to by the parties or undisputed. For fiscal year 2005-06 (August 1, 2005 to July 31, 2006), Plaintiff had net sales (after returns and allowances) of approximately $10.8 million and net revenue of $312,013. (Ptf's Supp Br Re Fin Stmnts at 2; Def's Resp and Cross-Mot. for Summ J at 5.) For the *Page 3 
2006-07 fiscal year, Plaintiff's net sales were approximately $10.8 million and its net revenue was $181,565. (Ptf's Supp Br Re Fin Stmnts at 2.) The majority of Plaintiff's revenues (approximately 70 percent per year) are from the sale of textbooks and course materials. (SF at 5, para. 12 a.) An additional 15 percent (approximately) of Plaintiff's revenues are from sales of computer hardware, software, and other electronics. (Id., para. 12 b, c.) The hardware is sold exclusively to Portland State University students at special prices approved by manufacturers, and some of the software and other electronics are offered in a similar fashion (i.e., exclusively to students at discounted prices). (Id.)
Since January 2006, Plaintiff has authorized direct funding of $60,000 in textbook scholarships. (SF at 7, para. 20 c.) Plaintiff offers between 130 and 160 textbook scholarships each year in amounts ranging from $250 to $750 to Portland State University students who demonstrate financial need. (SF at 6, para. 19.) Approximately 24,000 students attend Portland State University each year. (Def's Resp and Cross Mot for Summ J at 5.)
During fiscal years 2005-06 and 2006-07, Portland State University hosted on-campus educational and cultural events, some of which were sponsored by Plaintiff, with Plaintiff paying its own staff to work the events. Plaintiff sometimes provided supplies at these events, such as shopping bags, and offered featured items at discounted prices. (SF at 5, 6, para. 14.)
Plaintiff also donates cash and merchandise each year. In fiscal year 2005-06, Plaintiff donated $2,716 in merchandise and gift cards and $14,966 in cash donations to Portland State University and related organizations. (Ptf's Supp Br Re Fin Stmnts at 2.) In fiscal year 2006-07, Plaintiff donated $2,600 in merchandise and gift cards and made cash donations to Portland State University and related organizations in the amount of $14,500. (Id. at 2, 3.) *Page 4 
Finally, for fiscal year 2006-07, Plaintiff sold $4,252 in textbooks to the Disability Resource Center (DRC), a federally mandated assistance program for disabled students attending Portland State University. (SF at 17, para. 21.) The books were apparently purchased by tutors and interpreters who worked with the disabled students. (Ptf's Mot for Summ J at 22.) The DRC returned $2,025 worth of the materials purchased for full or partial refunds. (SF at 7, para. 21.)
 II. ANALYSIS
A. Statutes and Regulations
ORS 307.130[1] provides in part:
 "(1) Upon compliance with ORS 307.162, the following property owned or being purchased by art museums, volunteer fire departments, or incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:
 "(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."
OAR 150-307.130-(A)(4)[2] speaks to the purpose and activity required of a charitable institution. That rule provides:
 "(a) Any organization claiming the benefit of property tax exemption under ORS 307.130, as a charitable institution, must have charity as its primary, if not sole, object and must be performing in a manner that furthers that object.
 "(b) The activity conducted by the charitable institution must be for the direct good or benefit of the public or community at large. Public benefits must be the primary purpose rather than a by-product. An organization that is established primarily for the benefit of its members, is not a qualifying charity. For example, a rifle club formed primarily for the pleasure of its members also provides safety information and instruction. Since the club's primary purpose is not to provide a *Page 5 
direct benefit to the public, its property is not exempt. An organization that performs a service to a professional organization of private persons (example: teachers, physicians or architects) is not a charity.
 "(c) If the activity of the charitable institution relieves a government burden, it is an indicator that the institution may be charitable. Failure to relieve a government burden will not disqualify an organization as charitable.
 "(d) An element of gift and giving must be present in the organization's activities, relating to those it serves. This element of gift and giving is giving something of value to a recipient with no expectation of compensation or remuneration. Often, a charitable organization's product or service is delivered to recipients at no cost or at a price below the market price or price to the organization of the product or service. Declarations of worthwhile purpose and charitable endeavors must be manifested in concrete endeavors and tangible reality which benefits the recipient. Unless this element of a gift or giving is present promises of future worthy endeavors are meaningless by inaction, and give the applicant no preferred status."
OAR 150-307.130-(A)(4).
The parties agree that there are three elements of a qualifying charitable institution: "1) the organization must have charity as its primary, if not sole, object; 2) the organization must be performing in a manner that furthers its charitable object; 3) the organization's performance must involve a gift or giving." SW Oregon Pub. Def. Servicesv. Dept. of Rev., 312 Or 82, 89, 817 P2d 1292 (1991) (SW Oregon Pub.Def. Services) (emphasis added). (Ptf's Mot for Summ J at 14; Def's Resp at 8.) An additional requirement under the department's rule is that the institution's activity "must be for the direct good or benefit of the public or community at large." OAR 150-307.130-(A)(4)(b).
B. Burden of Proof and Rules of Construction
The burden is on the taxpayer to prove that a claim of exemption meets the statutory requirements. ORS 305.427; Golden Writ of God v. Dept. ofRev., 300 Or 479, 483, 713 P2d 605 (1986) (Golden Writ of God). In analyzing exemption cases, the court is guided by the / / / *Page 6 
principle that taxation is the rule and exemption from taxation is the exception. Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev., 301 Or 423,426-27, 723 P2d 320 (1986). Exemption statutes are strictly but reasonably construed. German Apost. Christ. Church v. Dept. of Rev.,279 Or 637, 640, 569 P2d 596 (1977); Washington County v. Dept. of Rev.,11 OTR 251, 254 (1989).
This court has ruled that "[s]trict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute to be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." North HarbourCorp. v. Dept. of Rev., 16 OTR 91, 95 (2002).
Although the statute is to be reasonably construed, the Oregon Supreme Court has ruled that "in case of doubt [the rule] will be construed against the taxpayer." Eman. Luth. Char. Bd. v. Dept. of Rev., 263 Or 287,291, 502 P2d 251 (1972).
C. Charity as Primary, if not Sole, Object
The first requirement is that the taxpayer have charity as its primary, if not sole, object. The parties disagree on the test to be applied in determining whether an organization is charitable. Plaintiff argues that the criterion is met if the taxpayer relieves a governmental body of some financial or service-related burden. (Ptf's Mot for Summ J at 15, citing SW Oregon Pub. Def. Services, 312 Or at 90). Defendant insists that the test of whether charity exists is as defined by this court in Corp. of LDS v. Dept. of Rev., 14 OTR 244, 249 (1997) (Corp. ofLDS), where the court stated "[g]iving to the poor and needy is the essence of charity." (Def's Resp and Cross-Mot for Summ J at 8-9.) The court is not persuaded that either party is correct, although, as between the two, Defendant seems to have the better argument.
The issue in SW Oregon Pub. Def. Services was whether the taxpayer was involved in any gift or giving, so the court's reference to the relief of a government burden seems to have been *Page 7 
applied to the third (i.e., gift or giving), as opposed to the first (charity as primary object), requirement for entitlement to exemption as a charitable institution as set forth in that case. SW Oregon Pub. Def.Serv's, 312 Or at 89.[3] Moreover, in Dove Lewis, the court expressly stated that "[r]elief of a government burden is also an indicator of giving." 301 Or at 431. As for Defendant's position, the court's focus inCorp. of LDS appears to have been on the element of gift or giving, so it is difficult to know whether the court's statement about the essence of charity being giving to the poor and needy was a general reference to the entitlement of charitable institutions to exemption as provided in the statute or to the first of the three generally recognized requirements set forth in SW Oregon Pub. Def. Services, requirements that also appear in the administrative rule — OAR 150.307.130-(A)(4)(a); i.e., charity as the primary, if not sole, object.[4]
D. Gift and Giving
The court in this case concludes that it is unnecessary to resolve the first requirement — whether Plaintiff has charity as its primary, if not sole, object — because Plaintiff fails to satisfy the *Page 8 
third of the three requirements for charitable exemption; namely, that there be an element of gift and giving present in the organization's activities. SW Oregon Pub. Def. Service, 312 Or at 89; OAR 150-307.130-(A)(4)(b).
"In determining whether an organization is, by its conduct, charitable, the crucial consideration is the element of gift or giving."Dove Lewis, 301 Or at 428. The administrative rule provides, in relevant part:
 "[the] element of gift and giving is giving something of value to a recipient with no expectation of compensation or remuneration. Often, a charitable organization's product or service is delivered to recipients at no cost or at a price below the market price or price to the organization of the product or service." OAR 150-307.130-(A)(4)(d).
Plaintiff insists it meets the third criterion for property tax exemption as a charitable institution because it is involved in "gift and the giving." (Ptf's Mot for Summ J at 21.) Plaintiff argues that it fulfills a public purpose by relieving a government burden and engages in outright giving. (Ptf's Mot for Summ J at 21; Ptf's Reply to Def's Resp to Ptf's Mot for Summ J at 6-8.) Plaintiff contends that its primary charitable giving activity is its textbook scholarship program, but, in addition, that it gives gifts to Portland State University and its students, helps subsidize the DRC, which is a federally mandated assistance program benefitting disabled students attending the university, and that it "regularly hosts on-campus events." (Ptf's Mot for Summ J at 21, 22.)
Defendant responds that Plaintiff fails to meet the requisite gift and giving because it does not relieve a government burden, does not give a sufficient proportion of its total revenue, does not benefit a sufficient number of individuals through its "giving," and fails to employ a charity-based pricing schedule. (Def's Resp and Cross-Mot for Summ J at 12-20; Def's Resp to Ptf's Suppl Br Re Fin Stmnts, at 2.) The court agrees. *Page 9 
It is not clear to the court that Plaintiff relieves the government burden.[5] Plaintiff's argument is that the state is statutorily and constitutionally committed to higher education, that the state has a strong obligation to fund higher education, and that student bookstore services are essential to a university's function of providing higher education. Further, argues Plaintiff, if its bookstore did not exist, then Portland State University would have to operate a bookstore on its own, at a cost to the state. (Ptf's Mot for Summ J at 15-17; Ptf's Reply to Def's Resp to Ptf's Mot for Summ J at 6-8.)
Defendant responds fairly persuasively that relief of the government burden exists where "the government would be required to use tax dollars to do the job the charitable enterprises are now doing[,]" and that Plaintiff has made no such showing. (Def's Resp and Cross-Mot for SummJ at 16-17; Dove Lewis, 301 Or at 431 (quoting Friendsview Manor,247 Or at 105, 106). Instead, argues Defendant, Plaintiff merely "asserts that it would be difficult for students to purchase course materials from non-dedicated sources and that it would be difficult for commercial bookstores to meet student needs." (Def's Resp and Cross-Mot for Summ J at 17.) Plaintiff's argument does go one step further, insisting that the only feasible and practical alternative would be for Portland State University itself to operate the bookstore. (Ptf's Motion for Summ J at 16.) Assuming that Portland State University would have to operate the bookstore if Plaintiff did not exist, it is not clear from the evidence that the government would actually bear any burden because the bookstore is self-funding (i.e., takes in enough revenue to cover its costs).
The court finds that where Plaintiff fails to satisfy the gift and giving requirement is in the area of actual giving. The proportion of Plaintiff's giving to its total revenue is less than one-half *Page 10 
of one percent in both fiscal years 2005-06 and 2006-07. The court inYMCA v. Dept. of Rev. (YMCA) declined to find giving in satisfaction of ORS 307.130 when "the actual relationship of scholarship giving * * * is less than four percent." 308 Or 644, 653-654, 784 P2d 1086 (1989). Plaintiff requests that the court compare the value of its giving to net, rather than total, revenue, but cites no authority for that invitation.[6] The court is not persuaded by Plaintiff's rationale for its proposed comparison.
As for the number of individuals benefitting from Plaintiff's giving, although there is no bright line test for measuring whether a sufficient number of individuals are recipients of an organization's giving, the court in YMCA declined to find sufficient giving when the relationship between the number of patrons paying full price to the number paying nothing or a reduced price is less than eight percent. 308 Or at 653-654. Moreover, in YMCA, the organization asserted that "anyone who asks and is in need can be permitted to use the facilities," Id. In the instant case, the bookstore provides textbook scholarships to no more than 160 students per year out of an annual enrollment of approximately 24,000 students, most of whom presumably use Plaintiff's bookstore. Although there is additional cash giving, the number of students benefitting is unclear, but it is unlikely that the combination comes close to eight percent. There is certainly no allegation or evidence to that effect.
Additionally, Plaintiff's pricing schedule does not provide the requisite gift and giving. The factors considered by the court inDove Lewis, which are relevant in a case where the institution charges its patrons, include: 1) whether the fee schedule is structured to cover all costs; 2) whether charges are made to all patrons and, if made, are lesser charges made to the *Page 11 
poor or are any charges made to the indigent; 3) whether patrons receive the same treatment irrespective of their ability to pay. 301 Or at 428-431. Those factors are among the four listed in OAR 150-307.130-(A)(4)(d)(C)[7] . Plaintiff in the instant matter structures its pricing to cover all costs, which, in Dove Lewis, was part of the reason the court found an absence of giving. 301 Or at 430-31. Moreover, Plaintiff has not demonstrated that it has a sliding scale for the sale of its books and other merchandise based on ability to pay. Or Methodist Homes, Inc. v.Tax Com., 226 Or 298, 311, 360 P2d 293 (1961) (finding insufficient giving because the poor received no discount and the indigent did not receive services for free).
Finally, as this court has previously noted, "in defining the third element, the Oregon Tax Court has held that the essence of charity is `giving to the poor and needy.'" United States Atheists v. MultnomahCounty Assessor, TC-MD No 001108E, WL 34148929 *3 (June 18, 2001), citing Corp. Of LDS, 14 OTR at 249. There is no allegation or evidence that the relatively few college students benefiting from Plaintiff's nominal giving fall into the category of "poor and needy."
 III. CONCLUSION
The court concludes Plaintiff is not exempt from taxation under ORS307.130 because its activities are not charitable in that the requisite gift and giving is lacking. Now, therefore,
IT IS ORDERED that Plaintiff's Motion for Summary Judgment granting it tax exemption as a charitable institution is denied;
IT IS FURTHER ORDERED that Defendant's Response and Cross-Motion for Summary Judgment on the issue of Plaintiff's entitlement to exemption as a charitable institution is granted; and *Page 12 
IT IS FURTHER ORDERED that Plaintiff's request for leave to submit additional argument regarding eligibility for exemption as a literary or scientific institution, as provided in ORS 307.130(1)(a), is granted.
Dated this _____ day of January 2009.
This interim order may not be appealed. Any claim of error in regardto this order should be raised in an appeal of the Magistrate's finalwritten decision when all issues have been resolved. ORS 305.501.
 This document was signed by Magistrate Dan Robinson on January 29,2009. The Court filed this document on January 29, 2009.
[1] All references to the Oregon Revised Statutes (ORS) are to 2005.
[2] All references to the Oregon Administrative Rules (OAR) are to the 2006 edition.
[3] In responding to the taxpayer's contention that performing indigent criminal defense services, as mandated by the United States Supreme Court in Gideon v. Wainwright, 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963), "indicates that plaintiff is involved in `giving,' the court referenced the department's administrative rule (OAR 150-307.130-(A)(3)(c)) providing that "if the activity of the charitable institution relieves a government burden, it is an indicator that the institution may be charitable." 312 Or at 89. All three of the elements of charity identified in SW Oregon Pub. Def. Services pertain to the question of whether an institution is "charitable," which is the fundamental statutory prerequisite to exemption for organizations claiming exemption as a "charitable" institution. ORS 307.130(1).
[4] The issue in Corp. of LDS was whether the storage of wheat in the church's grain elevators qualified the elevators for exemption where "no wheat stored in the facility has been given to others in time of need."14 OTR at 249. Defendant in that case argued that the poor and needy were not receiving any gift. In United States Atheists v. MultnomahCounty Assessor, the court concluded that Corp. of LDS was looking at the third element (gift or giving) when it held that the essence of charity is giving to the poor and needy. TC-MD No 001108E, WL 34148929 at *3 (June 18, 2001.)
In arguing that giving to the poor and needy is, indeed, the essence of charity, Defendant in this case makes a good point in noting that the court in Friendsview Manor v. State Tax Commission, 247 Or 94, 105, 106,420 P2d 77 (1966), declined to find charity where the beneficiaries were persons who were able to fend for themselves financially.
[5] Although the administrative rule provides in subsection (4)(c) that relief of a government burden is an indication that an institution may be charitable, the failure to relieve the state of a burden that it would otherwise bear does not disqualify an organization from an exemption under ORS 307.130. SW Oregon Pub. Def. Services, 312 Or at 90.
[6] Plaintiff insists that, when measured against net revenues, its giving ranged from 4.81 percent to 10.47 percent for fiscal year 2005-06 (depending on what amounts in addition to textbook scholarships are included), and from 19.38 percent to 28.69 percent for 2006-07. (Ptf's Supp Br Re Fin Stmnts at 3.)
[7] The fourth factor is "[w]hether the doors are open to rich and poor alike and without discrimination as to race, color or creed[.]" OAR 150-307.130-(A)(4)(d)(C)(iii). *Page 1