IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| UNITED STREETCAR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 160326N |
| | ) | |
| v. | ) | |
| | ) | |
| CLACKAMAS COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiff appeals the disqualification of property identified as Accounts 05023701, 05024276, 05023702, 05024321, 05024323, and P2248234 (subject property) from enterprise zone property tax exemption for the 2016-17 tax year. The subject property is a test track used to build streetcars. A trial was held in the Oregon Tax Courtroom in Salem, Oregon, on July 19, 2017. Michael Mangan, an Oregon attorney, appeared on behalf of Plaintiff. Kathleen J. Rastetter, Senior County Counsel, appeared on behalf of Defendant. The following witnesses testified at trial: Don Hutchison (Hutchison), Plaintiff's director of finance; Vicki Ballou (Ballou), Plaintiff's general counsel and corporate secretary; and Linda Dunn, a supervisor in Defendant's assessment section. Plaintiff's Exhibits 1 to 3 and 6 to 8 were received without objection. Defendant's Exhibits B to D, F to J, L, N, and P were received without objection.[2] Defendant offered Exhibit A,[3] but the court excluded that exhibit based on Plaintiff's objection to its relevance. At the close of Plaintiff's case, Defendant moved to dismiss Plaintiff's second

---

[1] This Final Decision incorporates without change the court's Decision, entered November 7, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] Several of the parties' exhibits are identical: Exs 1, 2, 3, 7, 8 and B, G, H, and I.

[3] Defendant's Exhibit A is Oregon Ironworks authorization for Enterprise Zone, which was ultimately withdrawn.

and third claims because Plaintiff presented no evidence on those claims. (*See* Compl at 2-3.) Plaintiff agreed to withdraw those claims. This matter is now ready for decision.

## I. STATEMENT OF FACTS

A.     *Plaintiff's Activities, Employment, and Qualification for Exemption prior to 2016*

Ballou testified that Plaintiff is a wholly owned subsidiary of Vigor Works LLC, which was formerly Oregon Iron Works, LLC. (*See* Ptf's Ex 3 at 5; Def's Ex I at 5.) Vigor Works is a subsidiary of Vigor Industrial LLC. (*See id.*)

In 2010, Plaintiff applied for and received an extended enterprise zone exemption of five years to begin in 2011. (*See* Ptf's Exs 7, 8; Def's Ex B at 1-3.) Plaintiff identified its eligible activities as manufacturing, assembly, and fabrication. (*See id.*) Also in 2010, Plaintiff signed a Written Agreement (the Agreement) with the Zone Sponsor setting forth additional terms for the exemption. (*See* Def's Ex B at 4-5.) Pursuant to the Agreement, Plaintiff agreed to "hire and maintain at least 5 full time positions by December 31, 2011 * * *." (*Id.* at 4.) The parties agree that, under the applicable law, "full-time" employees are those who worked at least 32 hours per week. *See* ORS 285C.050(7).[4] The Agreement further stated that "[o]nly full-time, year-around [*sic*] and non-temporary employees engaged a majority of their time in The Firm's eligible operations under ORS 285B.707 are counted[.]"[5] (*Id.* at 5.)

Hutchison testified that he was aware of Plaintiff's annual obligation to submit a claim form to Defendant and he submitted those forms. (*See* Def's Ex D.) On its claims forms, Plaintiff reported 22 employees in 2012; 32 employees in 2013; 16 employees in 2014; and 5

/ / /

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

[5] ORS 285B.707 was renumbered to ORS 285C.135 in 2003.

employees in 2015.[6] (Def's Ex D at 1, 9, 11, 14.) Hutchison and Dunn each testified that they had a conversation after Plaintiff filed its 2015 claim form, during which Dunn reminded Hutchison that Plaintiff would lose its exemption if it had fewer than five employees.

B.      *Plaintiff's 2016 Claim Form and Disqualification*

In 2016, Plaintiff reported zero employees on its annual claim form. (*See* Def's Ex E.) In an email from Hutchison to Dunn on March 30, 2016, accompanying the claim form, he wrote "As we are no longer actively building streetcars our employment numbers have dropped, with there being no active United Streetcar Employees at this time." (Def's Ex F.) Hutchison testified that he reported that Plaintiff had zero employees because, at that time, all of Plaintiff's employees were transferred to its parent company, Vigor Works, for purposes of payroll. (*See also* Ptf's Ex 2 at 4 (email from Hutchison to Dunn on June 2, 2016, stating "As we no longer run payroll out of United Streetcar I did not count any of these employees on the filing.").)

On June 2, 2016, following submission of Plaintiff's 2016 claim form, Hutchison and Dunn exchanged several emails regarding Plaintiff's employment and operations. (*See* Ptf's Ex 2.) Dunn testified that she also called Hutchison in an effort to determine if Plaintiff truly had no employees. Hutchison wrote to Dunn that,

> "For 2015, Vigor Works * * * did have six (6) individuals working full time on the United Streetcar contracts: 2 @ Clackamas, 1 @ City of Portland, 2 @ City of Tucson, and 1 @ Washington D.C. We also had an additional three (3) employees working part time supporting the United Streetcar projects all as employees of Vigor Works."

(*Id.* at 4.) Dunn testified that qualifying, full-time employees must work inside the zone. She testified that, of the full-time employees Hutchison reported, only two worked in Clackamas.

/ / /

---

[6] The number of employees reported was as of the date the claim was signed, but not after April 1. (*See* Def's Ex D at 1, 9, 11, 14.)

Hutchison testified that, when he wrote "full-time," he meant at least 40 hours per week. He did not know if Plaintiff's part-time employees worked at least 32 hours per week.

In the June 2, 2016, email exchange, Dunn inquired of Hutchison what he meant when he reported that "employees are still working on United Streetcar contracts." (Ptf's Ex 2 at 3.) In response, Hutchison wrote, "When I say we still have employees working on United Streetcar contracts it is related to our contractual warranty obligations – two years after the last car delivery on each contract – and service and parts support." (*Id.* at 2; *see also* Def's Ex I at 5 (Vigor Industrial financial statement for years ending 2015 and 2016, stating that Plaintiff was "engaged primarily in providing warranty and repair services for streetcars it previously manufactured").) Hutchinson testified that he did not recall Plaintiff's last delivery on its contracts. He testified that Plaintiff had delivered street cars to three cities—Portland, Tucson, and Washington, D.C.—and had ongoing warranty obligations with those cities. (*See* Def's Ex G at 2.) The cities "continue[d] to order parts on an as needed basis." (Ptf's Ex 2 at 2.)

Hutchison and Dunn also discussed Plaintiff's activities at the subject property. Dunn noted that the subject property lease in Defendant's possession "expired May 30, 2015," so she questioned whether Plaintiff even had "a viable presence in Clackamas County for the exemption." (Ptf's Ex 2 at 3.) Hutchison responded that he did not know about the lease expiration, noting Plaintiff was "still using the same building – although not all of the activity in the building is streetcar support related." (*Id.* at 2.) Dunn expressed concern about use of the "leased building * * * for purposes other than streetcar support[.]" (*Id.* at 1.) She inquired whether "the office space or some of the warehouse area [had] been assigned to another division of Vigor Works[.]" (*Id.*) Hutchison responded that, "[a]s for the USC manufacturing and assembly space it is used for the support and parts warehousing as well as being used by the

Marine division of Vigor Works." (Def's Ex G at 1.) Dunn testified that that statement was a "red flag" because the exemption was for Plaintiff, not Vigor Works. Hutchison testified that, within the warehouse space he referenced, Plaintiff continued to use the portion of the space for which it received property tax exemption.

Dunn testified that, after her email correspondence with Hutchison in June 2016, she did not receive any further communication from Plaintiff, so she sent the disqualification letter in July 2016. (Def's Ex H.) The letter stated that Plaintiff "failed to meet or maintain the employment level required as of April 1, 2016." (*Id.* at 1.) It further stated that, "[b]ecause the business firm failed to meet the requirements of the agreement entered into by the firm based on the information you provided, 100 percent of the taxes shall be assessed against the property for each year the property was granted the exemption." (*Id.*) Dunn testified that the "agreement" referenced in the disqualification letter was that between Plaintiff and the zone sponsor. (*See id.*)

C.    *Evidence of Plaintiff's Employment in 2016*

Plaintiff provided a payroll report for 2016. (*See* Ptf's Ex 6.) Ballou testified that she received that report by contacting the head of the human resources department and requesting a list of every employee who was coding their time to Plaintiff's projects after the transfer of payroll to Vigor Works.[7] Ballou testified that the employees Cynthia Al-jefri, Jeffrey Bailey, Hutchison, Brandon Johnson, Gayle Moffet, and Nancy Smith each worked at the subject property. (*See id.*) The other employees listed in the report did not work at the subject property. (*See id.* at 10, 12, 16.) Ballou testified that she believed each of the employees at the subject

/ / /

---

[7] Ballou testified that, if employees had been working on projects for different entities, they would have coded and billed their time to those entities rather than to Plaintiff.

property qualified as full-time by working at least 32 hours per week in 2016.[8]  She testified that she determined whether an employee worked full-time by totaling hours actually worked, not including holidays and other forms of paid time off, then dividing that number by 47 weeks. Ballou testified that 47 weeks is a "rule of thumb" for full-time after holidays, vacations, and other types of leave are excluded.

The payroll report listed employees' names, titles, and hours worked.  Al-jefri was a "supply chain purchasing assistant" who worked 1,763 hours excluding paid time off.  (*Id.* at 2.) Hutchison testified that she was an accounting clerk.  Bailey was a "loader" who worked 2,279.75 hours excluding paid time off.  (*Id.* at 4.)  Hutchison was a "project control manager" who worked 2,113 hours excluding paid time off.  (*Id.* at 6.)  Johnson was a "project manager" who worked 1,872 hours excluding paid time off.  (*Id.* at 8.)  Moffet was a "technical writer" who worked 1,450.50 hours excluding paid time off.  (*Id.* at 14.)  Smith was an "inventory specialist" who worked 1,904.75 hours excluding paid time off.  (*Id.* at 18.)

D.      *Evidence of Plaintiff's Qualifying Activities in 2016*

Ballou testified that "warranty work" includes assembly of parts brought to the subject property.  She testified that Plaintiff was engaged in manufacturing and would fabricate new panels if, for instance, there was a streetcar accident.  Neither party provided specific evidence of a streetcar accident or any other incident that required Plaintiff to fabricate panels.

Defendant questioned Hutchison about Plaintiff's manufacturing, fabrication, and assembly activities in 2016, in light of several documents suggesting that such work was performed elsewhere and by third parties.  In May 2016, Johnson exchanged emails with representatives of Freedman Seating Company regarding a delivery.  (*See* Def's Ex J.)

---

[8] In his testimony, Hutchison made multiple statements concerning which employees worked part-time and which worked full-time.  He could not recall the work schedules of some employees.

Hutchison testified that Plaintiff does not manufacture its own seats, but rather purchased them for delivery to customers. Regarding a five-page change order listing numerous parts, Hutchison acknowledged that Plaintiff was not the manufacturer listed for any of the parts. (*See* Def's Ex P.) On December 9, 2015, Plaintiff shipped an electric motor to Siemens. (Def's Ex L at 1.) Hutchison testified that Plaintiff performed work to "get ready to install" the motor, specifically the wiring and harness work, and Siemens did the "internal" motor work. He did not identify which employee performed that work. An "Incident/Warranty Report" dated July 10, 2016, stated Plaintiff "sent out to VECOM for repairs." (*Id.* at 2.) Hutchison testified that the item sent out for repairs was communication equipment.

Ballou testified that, based on her reading of applicable statutes, the *employer*—Plaintiff—must be engaged in the "business of manufacturing, fabrication, and assembly." She disagreed that *only* those employees engaged in manufacturing, assembly, and fabrication counted towards the five employee minimum. Ballou testified that Plaintiff's employees who worked at the subject property in 2016 were "engaged in the business of" the eligible activities, even if they were not all directly performing those activities. Dunn testified that, in her view, only full-time employees engaged in eligible activities—manufacturing, assembly, and fabrication—count for purposes of the exemption. (*See* Def's Ex B at 4-5.) Plaintiff inquired whether Dunn would count support staff if their work was necessary to the performance of the eligible activities. (*See* Def's Ex G at 2 (email in which Dunn wrote "The terms of the exemption authorization specify use of the property by [Plaintiff] – manufacturing and assembly to produce streetcars; we would include support/maintenance of product in that use").) Dunn testified that qualifying employees must support the eligible activities. Dunn testified that she saw no documents or other evidence showing that Plaintiff was engaged in eligible activities in

2016. Accordingly, she was not convinced that Plaintiff had at least five qualifying employees in 2016.

## II. ANALYSIS

The issue before the court is whether the subject property was correctly disqualified from enterprise zone property tax exemption for the 2016-17 tax year. More specifically, the issues are (1) whether Plaintiff had at least five employees who worked at least 32 hours per week in 2016; (2) whether Plaintiff was engaged in the eligible activities of manufacturing, assembly, and fabrication in 2016; and (3) whether Plaintiff's qualifying employees were required to engage a majority of their time in eligible activities and in fact did so.

As the party seeking affirmative relief, Plaintiff bears the burden of proof by a preponderance of evidence. ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). When analyzing an exemption statute, the court is guided by the principle that taxation is the rule and exemption from taxation is the exception. *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 426-27, 723 P2d 320 (1986). Property tax exemption statutes are strictly but reasonably construed. *SW Oregon Pub. Def. Services v. Dept. of Rev.*, 312 Or 82, 88-89, 817 P2d 1292 (1991). "Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 95 (2002). "In cases where the question is not legislative intent but whether a property fits the statute, even in close cases, exemption will be denied." *Evergreen Aviation & Space Museum v. Dept. of Rev.*, TC 5181, 5182, WL 1559051 at *2 (Apr 15, 2016) (citation omitted).

A.      *Enterprise Zone Exemption, Generally; Disqualification*

The purpose of the enterprise zone exemption program is to encourage, develop, grow, and expand "employment, business industry, and commerce" throughout Oregon, "but especially in those communities at the center of or outside major metropolitan areas for which geography may act as an economic hindrance." ORS 285C.055. In order to achieve that purpose, the enterprise zone exemption program provides "tax incentives for employment, business, industry and commerce * * *." *Id.*

Enterprise zone exemption is available for the qualified property of an "eligible business firm." ORS 285C.050(15); ORS 285C.200. To be an "eligible business firm," a business must be engaged in certain activities within an enterprise zone. *See* ORS 285C.135. Specifically, the business firm must engage "in the business of providing goods, products or services to businesses or other organizations through activities including, but not limited to, manufacturing, assembly, fabrication, processing, shipping or storage." ORS 285C.135(1). A business firm that provides "goods, products or services to the general public for personal or household use" does *not* qualify. ORS 285C.135(2)(a). A business firm that significantly engages in "retail sales or services, child care, housing, retail food service, health care, tourism, entertainment, financial services, professional services, leasing space to others, property management, construction or other similar activities" also does *not* qualify. ORS 285C.135(2)(b).

To receive enterprise zone exemption, an eligible business firm must first receive authorization from the zone sponsor and county assessor. *See* ORS 285C.140. Approval of both the zone sponsor and county assessor is "prima facie evidence that the qualified property of the business firm will receive the property tax exemption * * *." ORS 285C.140(8). Once an eligible business firm is authorized, it may receive property tax exemption on its qualified

property if it meets all of the requirements set forth in ORS 285C.200(1). Those requirements include the following: the firm (1) is "engaged in eligible business operations" within the zone;[9] (2) "owns or leases qualified property" located within the zone; and (3) achieves a minimum level of employment by a specified date. ORS 285C.200(1)(a)-(c).

ORS 285C.240(1) sets forth circumstances under which the county assessor *must* disqualify property from enterprise zone property tax exemption, including the following:

> (a) the exempt property is "sold, exchanged, transported or otherwise disposed of for use * * * by an ineligible business firm."

> (b) "[t]he qualified business firm closes or so reduces eligible operations that the reduction constitutes a substantial curtailment of operations under ORS 285C.210[.]"

> (c) "[t]he qualified business firm fails to meet any of the qualifications required under ORS 285C.200[.]"

> (d) "the qualified business firm fails to meet * * * any term of an agreement entered into with the sponsor under ORS 285C.160 with which the firm had agreed to comply[.]"

This court has previously agreed with a party's contention that "qualification and disqualification for enterprise zone exemption are effectively two sides of the same coin." *Hynix Semiconductor Mfg. America, Inc. v. Lane County Assessor*, TC-MD 091320B, WL 1706062 at *10 (May 5, 2011) (quoting the Department of Revenue's brief).

B.  *Minimum Number of Employees*

A county assessor must disqualify a business firm from the enterprise zone exemption program if it experiences a "substantial curtailment," which includes a reduction of the number

---

[9] The "eligible business operations" are those activities described in ORS 285C.135. Throughout the applicable statutes and forms, the phrases "eligible operations" and "eligible activities" appear to be used synonymously and interchangeably. *See e.g.,* ORS 285C.050(13) ("eligible operations"); ORS 285C.135(1) ("activities"); ORS 285C.200(1)(a) ("eligible business operations"); ORS 285C.240(1)(b) ("eligible operations"); Def's Ex B at 2 (enterprise zone application form referencing "eligible activity"). Accordingly, the court understands the reference to "eligible business operations" to refer to the "activities" described in ORS 285C.135(1).

of employees "by more than 85 percent from the highest number of employees of the firm within the enterprise zone[.]" ORS 285C.210(1). The parties agree that Plaintiff was required to maintain at least five full-time employees to retain its property tax exemption. They further agree that, in this context, "full-time" means at least 32 hours per week. *See* ORS 285C.050(7). Oregon Administrative Rule (OAR) 123-674-0200(6) states that, "as used in this rule and under ORS 285C.050: * * * * * (b) '32 hours per week' is computed by taking the total number of hours over the course of a year, for which the person is reimbursed in the form of wage or salary, excluding holidays, vacation and other paid leave, and dividing by 52." Using the formula in the administrative rule, five of Plaintiff's six employees at the subject property worked at least 32 hours per week in 2016: Al-jefri, Bailey, Hutchison, Johnson, and Smith.[10] Moffet worked only 27 hours per week under that formula. The court is convinced that Plaintiff's maintained five "full-time" employees at the subject property in 2016.

C.     *Eligible Activities of the Business Firm*

A county assessor must disqualify from enterprise zone exemption a business firm that fails to meet any of the qualifications required under ORS 285C.200, including engaging in "eligible business operations" within the zone. *See* ORS 285C.240(1)(c), ORS 285C.200(1). Relatedly, a county assessor must disqualify a business firm that fails to comply with the terms of its agreement with the zone sponsor. *See* ORS 285C.240(1)(d). In its application and agreement, Plaintiff identified its eligible activities as manufacturing, assembly, and fabrication. Based on the information received about Plaintiff's activities in 2016, Defendant concluded that Plaintiff no longer engaged in those activities. Plaintiff disagreed, asserting that it did.

/ / /

---

[10] Al-jefri worked 33.9 hours per week. Bailey worked 43.8 hours per week. Hutchison worked 40.6 hours per week. Johnson worked 36 hours per week. Smith worked 36.6 hours per week.

Hutchison confirmed that, as stated in Vigor Industrial's year-end financial statement, Plaintiff was no longer manufacturing new streetcars in 2016. Rather, Plaintiff was fulfilling its warranty obligations under three existing contracts. Plaintiff did not present evidence of its specific warranty obligations or identify the dates upon which its warranty obligations ceased.[11] Plaintiff maintains that its warranty work qualified as eligible activity because, for example, Plaintiff might assemble parts brought to the subject property or fabricate new panels if there was a streetcar accident. Additionally, Hutchison testified that Plaintiff's employees performed wiring and harness work on a motor in 2016. Plaintiff presented no evidence of those activities other than Ballou and Hutchison's testimony.

By contrast, Defendant presented documentary evidence (an email chain, a change order, a shipping invoice, and an incident/warranty report) that tended to show that Plaintiff did not engage in manufacturing, assembly, or fabrication, but rather acted as a liaison between its clients and other suppliers and manufacturers. The job descriptions of Plaintiff's employees raise a question of which employees were primarily engaged in eligible activities. The majority of the employees were office workers; specifically, a "supply chain purchasing assistant," a "technical writer," and an "inventory specialist." Hutchison's job title was "project control manager," but he testified at trial that he was Plaintiff's finance director. That leaves only two employees—a "loader" and a "project manager"—who may have been engaged in the eligible activities, although that is uncertain from the evidence presented. Ultimately, Plaintiff bears the burden of proof on this issue and, given that exemptions are strictly construed, the court finds that Plaintiff failed to prove that it was engaged in eligible business activities in 2016.

/ / /

_____

[11] An email from the Executive Vice President of Vigor referenced an expiration date of either February 29, 2016, or October 10, 2016, for at least one of Plaintiff's contracts. (*See* Def's Ex K at 1-2.)

D.      *Whether Employees Engaged in Eligible Activities*

The parties disagree whether employees must be engaged in the eligible activities of the business firm in order to count toward the minimum number of employees for purposes of the enterprise zone exemption.  Plaintiff's position is that, so long as the business firm is engaged in the eligible activities, the qualifying employees need not be *directly* engaged in the eligible operations; in other words, employees who support the eligible activities through office or other work may count toward the minimum number of employees.  It is unclear whether Defendant agrees with Plaintiff's reading of the law.  Dunn testified that, in any event, she saw no evidence that Plaintiff was engaged in eligible activities.

Under ORS 285C.050(13), "new employees hired by the firm" are defined as "only those employees of an authorized business firm *engaged for a majority of their time in eligible operations*."  (Emphasis added.)  Similarly, ORS 285C.200(8)(b)(A), which sets forth the requirements for an authorized business firm to receive exemption on qualified property, states that "employment of the firm" means "[t]he number of employees working for the firm *a majority of their time in eligible operations* at locations within the enterprise zone[.]"  (Emphasis added.)  The Agreement between Plaintiff and the zone sponsor stated "Only full-time, year-around [*sic*] and non-temporary employees e*ngaged a majority of their time in The Firm's eligible operations* under ORS 285C.707 are counted[.]"  (Def's Ex B at 5 (emphasis added).)

It is worth noting that activities of an "eligible business firm" under ORS 285C.135(1) are contrasted with the activities of a business firm that is *not* eligible for enterprise zone exemption under ORS 285C.135(2): providing goods, products, or services to the general public and "significantly" engaging in "retail sales or services, child care, housing, retail food service, health care, tourism, entertainment, financial services, professional services, leasing space to

others, property management, construction or other similar activities[.]" Given the distinction between eligible and ineligible activities under ORS 285C.135, a business firm that primarily engages in eligible activities may be permitted to count a certain number of support staff that do not directly perform those activities. Here, however, Plaintiff has failed to demonstrate by a preponderance of the evidence that it engaged in eligible activities in 2016 and which, if any, of Plaintiff's employees directly performed those activities.

### III. CONCLUSION

After careful consideration, the court concludes that Plaintiff failed to prove by a preponderance of the evidence that Defendant incorrectly disqualified the subject property from enterprise zone property tax exemption for the 2016-17 tax year. Although Plaintiff had five full-time employees in 2016, Plaintiff failed to prove by a preponderance of the evidence that it engaged in the eligible activities of manufacturing, assembly, or fabrication, and which, if any, of its employees performed those activities. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of November 2017.


_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Allison R. Boomer and entered on November 27, 2017.*